FREDERICK A. BRIGHAM v. ALBERT F. NATHAN.

No. 11,674.   ( 62 Pac. 319.)

62    243
e66    270
66    292
66    534

1. CORPORATIONS — *Dissolution — Action against Stockholders.*
The cessation by a corporation of all the business for which it was organized, the only business transacted being such as is incidental and necessary to the final closing up of its affairs, is a suspension of business within the meaning of the statute (Gen. Stat. 1899, § 1268), and, under such statute, for the purpose of suits by creditors against stockholders, such suspension, if continued for one year, is to be deemed a dissolution of the corporation.

2. ——— *Action against Stockholders — Limitation of Action.*
One who owns a matured obligation against a corporation which has suspended business, and who, with knowledge of such suspension, extends the time of payment, does not thereby extend the period of statutory limitation for beginning suit against the stockholders of the corporation, under sections 1268–1272 of the General Statutes of 1899; but, notwithstanding such agreement of extension of time, action against the stockholders may be brought, and must be brought, within the statutory period after the corporation suspended business.

Error from Wyandotte district court; HENRY L. ALDEN, judge. Opinion filed October 6, 1900. Affirmed.

*Stebbins & Evans*, and *Samuel Maher*, for plaintiff in error.

*Miller, Buchan & Morris*, for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action by the plaintiff in error, Frederick A. Brigham, as a judgment creditor of the Commonwealth Loan and Trust Company, against the defendant in error, Albert F. Nathan, as a stockholder in said company, to recover on the latter's statutory liability to pay the debts of his company.

The action was instituted under section 32 of chapter 23, General Statutes of 1868 (Gen. Stat. 1897, ch. 66, § 50). This section was repealed by sections 14 and 17 of chapter 10, Laws of 1898 (Gen. Stat. 1899, § 1260), but this repeal did not have the effect of abrogating rights of action theretofore existing. (*Woodworth v. Bowles*, 61 Kan. 569, 60 Pac. 331.) The facts are that on February 21, 1891, the plaintiff in error was a creditor of the Commonwealth Loan and Trust Company, owning a matured indebtedness against it. On that day the board of directors of the company passed a resolution to go into liquidation, and did then and thenceforth proceed to wind up the company's affairs. It transacted no business thereafter except such as was incidental to that object. A part of the scheme of liquidation was to inform the company's unsecured creditors of the action taken and to procure from them extensions of time for the payment of the indebtedness.

A short time after the date upon which the resolution of liquidation was passed, the plaintiff in error acceded to the company's request for an extension of time and surrendered his obligation against it, and took in lieu thereof another one dated February 21, 1891, due in five years thereafter. A question is raised as to whether the plaintiff in error, at the time of the exchange of the old obligation for the new one, had knowledge that the company had resolved to suspend business and go into liquidation. The evidence as to this was conflicting. Two officers of the company testified that notices giving the information were mailed to all the creditors. The plaintiff in error did not deny receiving such notice—declined to say that he did not; he only said that he had no recollection of receiving it. The court's finding, which

Brigham v. Nathan.

was against the plaintiff in error, was general in its terms.  So far as the disputed question of fact is material to the right determination of the legal questions involved, the court's general finding is inclusive of every special matter necessary to uphold its judgment.  Therefore, the question of fact must be resolved against the plaintiff in error.  He had notice that the company had suspended its business and was proceeding to wind up its affairs.

For some time after the resolution of liquidation, but how long does not appear, the company maintained offices in Kansas City, Mo., and Boston, Mass., but, as before stated, transacted no business except in liquidation of its affairs.  In 1894 it was put in the hands of a receiver.  February 21, 1896, the obligation due the plaintiff in error matured.  He brought suit against the company, and recovering a judgment, caused an execution to be issued, which was returned unsatisfied, and he thereupon instituted action against the defendant in error, as before stated.  Judgment went against him, wherefore he has prosecuted error to this court.

Two difficult questions are presented.  To these we have given much careful consideration.  The novelty of these questions and the paucity of authorities bearing on them do not permit their positive and dogmatic determination.  A statute material to one of these questions reads as follows :

1. Dissolution of corporation— statute construed.

"A corporation is dissolved—first, by the expiration of the time limited in its charter ; second, by a judgment of dissolution rendered by a court of competent jurisdiction ; but any such corporation shall be deemed to be dissolved, for the purpose of enabling any creditors of such corporation to prosecute suits against the stockholders thereof to enforce their individual

liability, if it be shown that such corporation has suspended business for more than one year, or that any corporation now so suspended from business shall for three months after the passage of this act fail to resume its usual and ordinary business." (Gen. Stat. 1899, § 1268; Gen. Stat. 1897, ch. 66, § 45.)

The question arising on this statute is, What is the meaning of the words, "has suspended business for more than one year"? Does it mean total suspension —the doing of no business whatever? Must the suspension be inclusive of the business of voluntary liquidation, or may it be exclusive of it? If a corporation quits its usual and ordinary business, the business which it was organized to conduct, and only prosecutes such business as is incidental to the closing up of its affairs, has it, within the meaning of the statute, suspended business, or is it still conducting business? We are constrained to hold that under such circumstances it has suspended business. What the statute means by business is usual and ordinary business—the business to conduct which the company was organized; that business which constitutes the active life of the company, and which looks to a continuance of such life, and not that business which looks to a cessation of its affairs. Corporations are formed for the purpose of commercial activity in a chosen field. Operation in that field is its business. The abandonment of that field is not its business, but is an exigent condition, not contemplated in its venture and not entered upon as a corporate enterprise. The preservation of the assets of a corporation and the payment of its debts are, of course, part of its business; but, in the sense in which the word is used in the statute, the performance of those duties must be incidental to its life, and not incidental to its dissolution. The concluding clause of the section quoted lends counte-

Brigham v. Nathan.

nance to this view when it says: "Or that any corporation now so suspended from business shall for three months after the passage of this act fail to resume its *usual* and *ordinary* business." The adjudicated cases are few in number, so far as we have been able to learn in our research, and with the exception of one, possess only an incidental bearing upon the subject.   In that one it was ruled :

"Where a corporation, the ordinary business of which was to make fire and marine insurances, and to lend money on bottomry and respondentia, resolved to cease making insurances, to cancel outstanding policies, and to liquidate, as soon as possible, all liabilities, and for more than a year it had issued no new policy, made no loan, on bottomry or respondentia, taken no new risk except to fulfil stipulations to that effect in open policies outstanding when the resolution was adopted, and during the year only six risks were outstanding, it was held that the corporation had suspended its ordinary and lawful business for one year, and must be adjudged to be dissolved, although its corporate organization had been regularly kept up until the time of the application." (*Matter of the Jackson Marine Insurance Company*, 4 Sandf. Ch. 559.)

We conclude, therefore, that the Commonwealth Loan and Trust Company suspended business February 21, 1891, within the meaning of the statute before quoted, so that the statute of limitations upon actions by creditors against stockholders began to run at. the expiration of one year from that date. · (*Cottrell v. Manlove*, 58 Kan. 405, 49 Pac. 519.)

But the plaintiff in error at that time possessed no matured obligation against the Loan and Trust Company.   He had before that time surrendered his matured obligation against it and taken a new one extending the time of payment. What effect did this have upon him to

2. Extension of time by creditor—limitation of action.

suspend his right of action against the defendant in error as a stockholder of the company? We are con-strained to say that it had no effect; that notwith-standing the immaturity of his demand against the company he had a present right of action against its stockholders, and that right of action began to run at the expiration of one year from the company's sus-pension of business.

What is the legal relation of a corporation stock-holder to the company's creditors? He is not a surety in the ordinary sense of that word, nor yet is he in the full sense an independent obligor. His obligation, in a sense, is collateral to that of the company. It cannot be sued on until the company has either sus-pended business for one year or until judgment has been secured against it and execution returned unsat-isfied. Our opinion is that when either of these con-tingencies occurs the stockholder's collateral obliga-tion becomes so far disconnected from the company's principal obligation as to be independent of it and to be amenable to proceedings for its enforcement, and that the creditor cannot by private composition with the company lengthen the term of the stockholder's liability and suspend, as against him, the running of the statute of limitations; and the same is true if the composition was effected before the three years' stat-ute began to run, because the statute in reality is four years, not three—one year from the time of dissolu-tion, i. e., the time of suspension of business—and then three years after the expiration of that period. This view, we think, can be fairly taken from the stand-point of the statute itself. The statute reads as fol-lows:

"If any corporation created under this or any gen-eral statute of this state, except railway or charitable

or religious corporations, be dissolved, leaving debts unpaid, suits may be brought against any person or persons who were stockholders at the time of such dissolution, without joining the corporation in such suit." (Gen. Stat. 1897, ch. 66, § 49.)

This statute, as will be observed, authorizes suits against stockholders of corporations which have been dissolved "leaving debts unpaid." Now, a debt unmatured is as much a debt unpaid as though it had matured, and the statute has drawn no distinction between debts matured and unmatured. It authorizes suits on them because unpaid. We are of the opinion, therefore, that the extension of the time of payment of the obligation of plaintiff in error, made between himself and the loan company, did not have the effect to extend the time of its payment as against the company's stockholders, but that the plaintiff in error might have instituted an action against them at the end of one year from the company's suspension of business, and that, not having done so for more than three years after that time, the statute of limitations was a bar to his right. Authorities are cited to us by both sides. None of them has a direct bearing on the question, and we do not, therefore, review them.

The judgment of the court below is affirmed.