J. G. WEST v. THE TOPEKA SAVINGS BANK.

No. 12,895.  (72 Pac. 252.)

SYLLABUS BY THE COURT.

1. CORPORATIONS— *Stock. Subscription—Limitation of Action.* So long as a private corporation is a solvent and going concern the statute of limitations does not begin to run on a stockholder's subscription to its capital stock, to be paid at intervals upon the call of the board of directors, until a call has been made.

2. ———— *Suspension of Business—Limitation of Action.* When a private corporation becomes insolvent and suspends active business, or when it closes its doors and ceases all its usual and ordinary business, leaving debts unpaid, the statute of limitations begins to run at once on a stockholder's subscription to its capital stock, to be paid at intervals upon the call of the board of directors, and then subject to call, even though no call be made.

3. BANKS AND BANKING— *Savings Banks.* The banking law of 1891 superseded the savings-bank act of 1868, and thereafter all savings banks previously organized and engaged in the business of receiving money on deposit were amenable to its provisions.

4. CORPORATIONS— *Calls for Stock Subscriptions— Legislative Power—Limitation of Action.* When a stockholder's subscription to the capital stock of a corporation provides that payments on such subscription shall be made in instalments of a certain per cent. as called for by the board of directors, provided thirty days intervene between calls, it is competent for the legislature to divest the board of directors of its discretion to postpone calls beyond periods of thirty days each, and to fix absolutely, within the limits of the contract, the time and amount of such payments. In such case the payments become due at the times prescribed by law, and the statute of limitations begins to run against their collection as soon as default occurs.

5. ———— *Action on Subscription—Pleading.* If, in an action by a corporation against a stockholder to recover an unpaid subscription to its capital stock, the petition tenders an issue upon the question of the necessity for the stock call, the stockholder may meet such issue by the allegation of pertinent facts in his answer.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed April 11, 1903. Reversed.

*Garver & Larimer*, and *E. A. Austin*, for plaintiff in error.

*Overmyer, Mulvane & Gault*, for defendant in error.

The opinion of the court was delivered by

BURCH, J.: On May 12, 1901, the Topeka Savings Bank commenced an action against J. G. West to recover on his written subscription to the capital stock of the bank, as follows :

"SUBSCRIPTION TO CAPITAL STOCK OF THE
TOPEKA SAVINGS BANK.

"The undersigned, each for himself, hereby subscribes for and agrees to take the number of shares (of the par value of $100 per share) of the capital stock of the Topeka Savings Bank of Topeka, Kansas, set against his name.

"Each subscription to be paid in instalments of ten (10) per centum of the amount thereof, as called for by the board of directors of said Topeka Savings Bank; provided, however, that at least thirty (30) days shall intervene between calls.

| DATE. | SIGNATURE. | ADDRESS. | Shares Taken. | Amount. | Memo. |
|---|---|---|---|---|---|
| 1887. Mch. 30 | J. G. West. | Topeka, Kas. | 10 | $1,000. | |

The petition alleged that the bank was a corporation organized March 11, 1887, for the purpose of receiving and caring for deposits of money; that on

March 6, 1896, it ceased to do active business, and borrowed from the Bank of Topeka a sum sufficient to pay all its liabilities, so as to leave the latter bank its sole creditor ; and that calls were made on the subscription of West on June 1, 1896, and January 26, 1899, which he failed to pay. Judgment was prayed for the amount in default. The answer contained several defenses, to all of which, except that embodying a general denial, general demurrers were sustained, and the defendant, West, predicates error upon the conduct of the district court in so doing.

The second defense has not been argued either in the brief or at the bar, and need not, therefore, be considered.

The third and fifth defenses may be disposed of together, and are as follows :

" *Third.* For a third and further answer and defense hereto, said defendant alleges that said entire contract of subscription set up in said petition, and the total balance unpaid thereon, could, by the terms thereof, have been declared due and called for by the board of directors of the plaintiff in ten months from the date of said subscription, and the whole amount thereof could have been declared due and called for prior to the 1st day of December, 1892 ; that this suit was not commenced within five years of said last-mentioned date, and by reason thereof this action was, at the time of its commencement, wholly barred by the five-year statute of limitations."

"*Fifth.* For a fifth and further answer and defense said defendant alleges that on the 2d day of March, 1896, said plaintiff, in pursuance of a resolution of its board of directors then passed and adopted, ceased to transact any and all of its usual and ordinary business and permanently closed its doors, and thereafter transacted no business except such as was incident to the winding up of its affairs ; that at that time, and for a long time prior thereto, and ever since,

said bank was and continued to be wholly insolvent, and it became and was the imperative duty of the board of directors of said plaintiff to have immediately called for the entire amount then unpaid on said subscriptions ; that by reason thereof the total amount then remaining unpaid on said contract of subscription became immediately due. and payable on March 2, 1896 ; that this suit was not commenced within five years from said last-mentioned date, and by reason thereof this action was, at the time of its commencement, wholly barred by the five-year statute of limitations.''

It is established law in this state that when some preliminary action is an essential prerequisite to the bringing of a suit, and such action rests with the claimant, he cannot defeat the operation of the statute of limitations by long and unnecessary delay in taking the antecedent step ; and the statute will begin to run within a reasonable time after the party could, by his own act, perfect his right, which reasonable time will not, in any event, extend beyond the statutory time fixed for bringing the suit.   This doctrine has been stated and restated, illustrated and illuminated, applied and reapplied, until it has become a truism. (*A. T. & S. F. Rld. Co. v. Burlingame Township*, 36 Kan. 628, 14 Pac. 271, 59 Am. Rep. 578 ; *Rork v. Comm'rs of Douglas Co.*, 46 id. 175, 26 Pac. 391 ; *Bauserman v. Charlott*, 46 id. 480, 26 Pac. 1051 ; *Bauserman v. Blunt*, 147 U. S. 647, 13 Sup. Ct. 466, 37 L. Ed. 316 ; *Kulp v. Kulp*, 51 Kan. 341, 32 Pac. 1118, 21 L. R. A. 550 ; *Comm'rs of Graham Co. v. Van Slyck*, 52 id. 622, 629, 35 Pac. 299 ; *Harrison v. Benefit Society*, 59 id. 29, 51 Pac. 893 ; *Bank v. King*, 60 id. 733, 57 Pac. 952 ; *Black v. Elliott*, 63 id. 211, 65 Pac. 215, 88 Am. St. Rep. 239.)

What bearing does it have upon the facts of this controversy?   The contest in this case is between the

corporation and a stockholder. Under the law the board of directors is clothed with the management of the affairs and business of the corporation. This business is conducted primarily in the interest of the stockholders. The welfare of the corporation, however, requires that the obligation of a stockholder to pay the amount of his subscription be enforced, if necessary, against his will. The board of directors, therefore, occupies a dual relation in reference to the stockholder. It is both agent and adversary. It represents and it antagonizes. It protects and it assails.

In the conduct of the corporate enterprise, in choosing methods, in fixing policies, and administering affairs, the board must be held to act on behalf of the stockholder. It represents him. The determination of the extent to which the capital stock shall be embarked falls naturally within the province of those who are charged with the prosecution and success of the undertaking; and in exercising the power vested in it by law, or by contract, to fix the time and amount of stock calls, the board in a just and proper sense represents the stockholder, as it does in other matters involving judgment and discretion. The stockholder in effect authorizes the board to determine that question for him. Under such circumstances delay in making a call beyond the time in which the board could arbitrarily make it cannot be taken advantage of by the stockholder and his liability upon his subscription continues to subsist. The character of the relationship excludes the application of the statute of limitations.

The other side of the relation, however, is equally important. In a suit begun in the name of a corporation against a stockholder to compel payment of his subscription, the corporation and the stockholder

West v. Bank.

are antagonists. The making of a call is but a step in the process of collection, and in ordering it the board is not the representative of the stockholder, but of the corporation. From the date of his subscription the relation of the subscriber to the corporation is that of a debtor to a creditor. The power and right to render certain the time and amount of payments pertain to the corporation as creditor, and the exercise of the function is necessarily adverse to the debtor. To such a status the statutes of limitations do apply. This element of antagonism must invade the relations of the parties whenever the primary duty of the board to corporate creditors constrains it to assume, in the name of the corporation, the strict attitude of creditor toward the stockholder as debtor. This may occur upon suspension induced by insolvency, or it may occur upon a voluntary renunciation of all effort to attain the objects for which the corporation was formed, which necessarily precipitates a settlement of corporate affairs. In such cases the board no longer represents the stockholder in reference to his unpaid subscription, but is chiefly concerned with the collection of the debt he owes the corporation, in the interest of creditors. From this time delay is at the risk of the corporation, as of any other creditor, and it must be held to the rule of diligence promulgated in the cases cited, or it could ''defeat the purpose of the statutes of limitation, which are statutes of repose, founded on sound policy, and which should be so construed as to advance the policy they were designed to promote.'' ( *A. T. & S. F. Rld. Co. v. Burlingame Township*, supra.)

In this case the fact of insolvency became patent March 6, 1896. At that date, at least the primary duty of the corporation lay in the protection of its

34—66 KAN.

creditors rather than in the indulgence of its debtors. It was its duty then to exercise its power and authority and proceed to collect its assets. The status of the parties had become materially changed.

"So long as the corporation is solvent, the whole subscription is due in accordance with its terms, and is payable when and as called for by the corporation. But when the corporation becomes insolvent, the contract between it and the subscriber is terminated, and his debt to it then is only for such part of his subscription as is required to pay the corporate debts. It is a debt not to it in its own right but in the right of its creditors. But it would seem that the status of the stockholder as holder of a fund liable at least contingently to the creditors must be fixed at the time and by the fact of the ascertainment of insolvency. It is the general rule that insolvency fixes the relative rights of all the parties concerned. From that moment the unpaid subscriptions become part of the assets for payment of the creditors." (*Swearingen v. Dairy Co.*, 198 Pa. St. 68, 73, 53 L. R. A. 471, 47 Atl. 941.)

Being insolvent, the duty of the corporation to satisfy its obligations became urgent and imperative. As creditor, it had the power to fix at once its debtor's liability. Delay for a single day was inexcusable, and the statute commenced to run at once.

Without absolute insolvency, the closing of the bank's doors and the cessation of all its usual and ordinary business, with debts remaining unpaid, terminated any representative capacity the board of directors might have fulfilled for the stockholder with reference to his unpaid capital stock while the institution was a going concern. The charter purposes were then abandoned and the parties relegated to their proper status of debtor and creditor as the most important of their relations in the sole remaining business of

winding up the bank's affairs. From that time un-paid subscriptions were assets for the payment of creditors, and not for the prosecution of the corporate undertaking. The stockholder's liability was properly for so much only of his unpaid subscription as was necessary to pay corporate debts. This liability the corporation should have promptly enforced. No fact appears deterring or impeding it from so doing, or legally excusing the immediate taking of preliminary steps for that purpose. It would not have been un-seemly to issue a call before resolving to suspend. The statute, therefore, commenced to run when, by order of the board of directors, the bank suspended.

Much erudition has been brought to bear upon this subject in other jurisdictions. The views set forth above receive some support in principle from the fol-lowing authorities: *Swearingen v. Dairy Co.*, 198 Pa. St. 68, 47 Atl. 941, 53 L. R. A. 471; *Glenn v. Dor-sheimer*, 23 Fed. (C. C.) 695; *Glenn v. Dorsheimer*, 24 Fed. (C.C.) 536; *Glenn v. Priest*, 28 Fed. (C.C.) 907; *Ross-Meehan Brake Shoe F. Co. v. Southern Malle-able I. Co.*, 72 Fed. (C.C.) 957; *Payne v. Bullard*, 23 Miss. 88, 55 Am. Dec. 74; *Curry v. Woodward*, 53 Ala. 371; *Henry et al. v. Vermillion and Ashland R. R. Co. et al.*, 17 Ohio, 187; *First Nat. Bank of Garrettsville v. Greene, Adm'r, etc.*, 64 Iowa, 445, 17 N. W. 86, 20 N. W. 754; *Boyd v. Mutual Fire Ass'n*, 90 N. W. (Wis.) 1086, 1091; *Hatch v. Dana*, 101 U. S. 205, 25 L. Ed. 885.

In Iowa it has been held that, since it rested with the board of directors of the corporation to make the call, delay in making it could not suspend the opera-tion of the statute of limitations, and that such a case fell within the rule established by a series of decisions, like those of this court, cited above, holding that when

a plaintiff can, at any time, acquire a right to recover against a defendant, the statute of limitations begins to run when he might have done so. Thus, in *Great West. Tel. Co. v. Purdy*, 83 Iowa, 430, 432, 50 N. W. 45, 162 U. S. 329, 16 Sup. Ct. 810, 40 L. Ed. 986, it was said :

"It will be observed that five per centum of the amount of the stock was payable when the subscription was made, and the balance was to be paid as the directors of the corporation should order. It may be assumed that this balance did not become due, and no action to recover therefor could be maintained until such an order had been made. It rested with the corporation, by proper orders and notices, or other acts, to acquire the right to maintain an action. It is the case of a creditor or obligee holding, by the terms of the contract, the power to acquire, by his own act, the right to maintain an action upon the contract. It is plain that this power must be exercised at a just and reasonable time, and not hastened or delayed to the prejudice of the other party. . . . Surely the law will not permit a party, by his own inaction, to defeat the statute of limitations. This statute does not commence to run until an action can be brought ; that is, until the plaintiff acquired the right, by the terms of the contract, to commence a suit thereon. It is very plain that, by the terms of the contract, the corporation had the right, at any time, to institute the suit. But that right was to be exercised upon an order for payment and notice thereof. These acts thus pertain to the commencement of the action, being a part of the proceedings for the remedy, and depend upon the exercise of the will of the directors of the company, just as do the issuing of a notice or filing of a petition in the action. Surely, it would be wholly unreasonable to say that the company had not the right to commence an action, for the reason that it had not ordered payment and given notice thereof."

The same rule has been announced in Pennsylvania,

in *Pittsburg and Connellsville Railroad Company v. Byers*, 32 Pa. St. 22, 72 Am. Dec. 770, affirmed in *Swearingen v. Dairy Co.*, supra, and approved in *A. T. & S. F. Rld. Co. v. Burlingame Township*, supra.

These cases lay stress upon the relations of debtor and creditor to the exclusion of all other considerations. So long, however, as the stockholder does not make a tender of the balance of his subscription, as he may lawfully do at any time, ( 1 Cook, Corp. § 106 ; *Potts v. Wallace*, 146 U. S. 689, 13 Sup. Ct. 196, 36 L. Ed. 1135 ; *Marsh and others v. Burroughs and others*, 1 Woods [U. S.] 463, Fed. Cas. No. 9112,) and submits to the conduct of the business by his own agents for that purpose, upon less than the full capital, he ought not to be allowed to repudiate their conduct in order to escape liability when the unpaid balance is required for the satisfaction of corporate debts incurred upon the faith of the whole amount of stock subscribed. The relation is too nearly that of trustee and beneficiary to permit the statute of limitations to be invoked.

By many other decisions it has been declared that the statute does not run at all until a call or authorized demand is made. Among them are the following : *Scovill v. Thayer*, 105 U. S. 143, 26 L. Ed. 968 ; *Hawkins v. Glenn*, 131 id. 319, 9 Sup. Ct. 739, 33 L. Ed. 184 ; *Glenn v. Leggitt*, 135 id. 533, 10 Sup. Ct. 867, 34 L. Ed. 262 ; *Glenn v. Marbury*, 145 id. 499, 12 Sup. Ct. 914, 36 L. Ed. 790 ; *Glenn, Trustee, v. Williams*, 60 Md. 93 ; *Glenn, Trustee, v. Semple*, 80 Ala. 159, 60 Am. Rep. 92 ; *Glenn, Trustee, v. Howard*, 81 Ga. 383, 78 S. E. 636, 12 Am. St. Rep. 318 ; *Gibson v. C. & N. R. T. & B. Co.*, 18 Ohio St. 396 ; *Thompson v. Savings Bank*, 19 Nev. 171, 7 Pac. 870, 3 Am. St. Rep. 881 ; *Washington Savings Bank v. Butchers & Drov-*

*ers' Bank*, 107 Mo. 133, 17 S. W. 644, 28 Am. St. Rep. 405 ; *Great Western Telegraph Co. v. Gray*, 122 Ill. 630, 14 N. E. 214 ; *Vanderwerken v. Glenn, Trustee*, 85 Va. 9, 6 S. E. 806 ; *Marr v. Bank of West Tennessee*, 4 Lea ( Tenn.) 578 ; *Allibone et al. v. Hager et al.*, 46 Pa. St. 48.

The principle of *A. T. & S. F. Rld. Co. v. Burlingame Township*, supra, is now so thoroughly engrained in the fabric of our jurisprudence that it is not sufficient in this state to say, with the authorities just cited, that the statute does not commence to run until an unconditional liability is fastened upon the subscriber by a call, or its equivalent. Since the corporation can fix the liability and thereby start the statute, delay in doing so cannot prevent its running. To hold otherwise, and permit the liability of the stockholder to continue for an indefinite period, would defeat the policy underlying the statute. Nor should the statute be subverted by an undue enlargement of the "trust," "sacred," "reserve" and other magnifying-adjectives "fund" theory of corporate assets, or by an undue extension of the representative functions of the board of directors, for the purpose of protecting creditors. In this state creditors have ample remedies. But they too are bound by the rule of diligence. ( *Cottrell v. Manlove*, 58 Kan. 405, 49 Pac. 519 ; *Bank v. King*, 60 id. 733, 57 Pac. 952 ; *Brigham v. Nathan*, 62 id. 243, 62 Pac. 319 ; *Elevator Co. v. Whitbeck*, 63 id. 102, 64 Pac. 984 ; *McHale v. Moore*, ante, page 267, 71 Pac. 522.)

The corporation cannot claim exemption from the statute for the benefit of creditors when creditors are themselves bound by it. It follows, therefore, that the demurrer to the third defense was properly sustained, and that the demurrer to the fifth defense should have been overruled.

Under the fourth defense it is claimed that the banking act of 1891 (Laws 1891, ch. 43) applied to the plaintiff; that the plaintiff complied with its provisions relating to reports and statements, submitted to examinations, and was given a certificate by the bank commissioner on December 2, 1892, showing that it had been duly organized, as required by law, and was authorized to transact a banking business as provided by that act. Section 6 of that act was as follows:

"Not less than ten per cent. of the residue of the capital stock of such bank shall be paid in each month after such bank shall have been authorized to commence business as aforesaid."

It is claimed that under this provision the total balance unpaid on defendant's subscription became due on or before August 2, 1893. If this be true the action was barred.

At the time of the passage of the act of 1891 there was no banking law on the statute-book, except the savings-bank act under which plaintiff had organized and a penal statute making officers of banking institutions responsible for the reception of deposits or the creation of debts when the bank is insolvent, or in a failing condition. By the new law the legislature undertook to deal with the entire subject of banking in this state, evidently with the purpose of bringing order out of the chaos then prevailing, to the benefit and protection of the people of the state. All matters relating to organization, conduct, management, and the winding up of affairs, were provided for, and a special state office was created for the purpose of supervision, regulation, and control. The title of the act expressly named regulation as well as organization. Many of its provisions indubitably applied to

banks already in existence (some of them are con-
ceded by counsel for defendant in error to be applica-
ble to savings banks) and section 35 of the law itself
provided as follows :

"Any individual, firm or association who shall re-
ceive money on deposit, whether on time certificates
or subject to check, shall be considered as doing a
banking business, and shall be amenable to all the
provisions of this act."

The constitutionality of this law as an exercise of
the police power of the state has been declared by this
court. ( *Blaker v. Hood*, 53 Kan. 499, 36 Pac. 1115,
24 L. R. A. 854.)

Without entering upon an analysis of the two stat-
utes it is sufficient to say that the act of 1891 was in-
tended to include a revision of the savings-bank act,
and to be a substitute for it. In framing the new
law some of the provisions of the old were retained.
These are to be construed as a continuation of such
provisions—not of the chapters and sections, but of
the provisions merely. But the savings-bank act it-
self was superseded by the general law. From this it
follows that section 128, article 16, chapter 23, Gen-
eral Statutes of 1868, was supplanted by sections 5
and 6 of the act of 1891, the latter of which is quoted
above.

Power to make such a change in the law was granted
to the legislature by the constitution, in section 1, arti-
cle 12, which reads as follows :

"The legislature shall pass no special act conferring
corporate powers. Corporations may be created un-
der general laws ; but all such laws may be amended
or repealed."

A statute relating to the amount of capital stock,
and the time, manner and condition of its payment,

clearly appertains to the subject of corporate creation, and is, therefore, subject to both amendment and repeal.

The new law having determined absolutely, within the limit of the contract, the time and amount of the payments to be made by the stockholder upon the residue of his subscription, they became due at the prescribed periods. (2 Beach, Priv. Corp. § 565, note 1; 1 Cook, Corp. § 106.)  The statute of limitations commenced to run against their collection as soon as default occurred.

Defendant in error insists that the statute in question impairs the obligation of the contract of subscription, and, hence, that it cannot be applied.  It appears, however, that by the statute the legislature merely asserted the power which, under the contract, had been left to the discretion of the board, and made absolute the liability which the board had the power to fix, to the same extent the board might have done. Nothing was affected except the board's power to delay.  The liability of the stockholder to pay was not changed or impaired or its boundaries of either time or amount disturbed.  The board was the creature of the legislature, and subject to its direction and control.  Any power the board might lawfully exercise the legislature could require to be exercised, or it could exercise the power itself.  Therefore, the demurrer to the fourth defense should have been overruled.

The sixth defense presents matters which become material to the rights of the defendant only in the event of a holding adverse to him upon the demurrer to the fifth defense.  Since the question so raised has been decided in his favor, the ruling of the district

court sustaining the demurrer to the sixth defense will not be disturbed.

The seventh defense is much confused in its allegations. It was undoubtedly subject to motion, and probably to a demurrer, on other grounds than the one proposed. The demurrer, however, was general, and enough appears in the answer to show that the debt exhibited in the petition as the foundation for the call was satisfied. The petition invited such an issue, and defendant was entitled to meet it. Therefore, the demurrer to the seventh defense should have been overruled.

The judgment of the district court is reversed, with direction to proceed further in accordance with this opinion.

All the Justices concurring.