### CRISSEY v. MORRILL et al.

(Circuit Court of Appeals, Eighth Circuit. November 2, 1903.)

No. 1,725.

1. CORPORATIONS—LIABILITY OF STOCKHOLDERS UNDER KANSAS STATUTE—LIMI-TATION.

Under the provisions of Gen. St. Kan. 1889, § 1192, relating to the liability of stockholders as construed by the Supreme Court of the state, a right of action in favor of a corporate creditor against a stockholder accrues one year after the corporation ceases to transact any business except for the purpose of liquidation, and an action against the stock-holder is barred in three years from that time whether the debt as against the corporation is matured or not, and in whatever form of pro-ceeding the creditor undertakes to enforce the liability; but the rule applies only to an indebtedness of the corporation which is absolute, and where it is merely a guarantor on an unmatured obligation of another limitation does not begin to run in favor of a stockholder until the liability of the corporation has become fixed by the default of the prin-cipal debtor.

2. SAME—PROCEEDING AGAINST STOCKHOLDER.

The fact that a number of demands held by a creditor against a Kansas corporation were merged in a single judgment before proceed-

¶ 1. Stockholders' liability to creditors in equity, see notes to Rickerson Roller Mill Co. v. Machine Co., 23 C. C. A. 315; Scott v. Latimer, 33 C. C. A. 23.

ings were instituted against a stockholder thereon does not preclude the creditor from showing that the liability of the corporation on one of the original demands was contingent only, and the date when it became fixed, to meet the defense of limitation pleaded by the stockholder.

3. LIMITATION OF ACTIONS—RIGHT OF DEFENDANT TO INVOKE — BURDEN OF PROOF.

When the defense of limitation is properly pleaded, the burden rests on the plaintiff to prove, if such is the fact, that by reason of concealment or absence from the state defendant is not entitled to the benefit of such defense.

4. SAME—PROCEEDING AGAINST STOCKHOLDER—KANSAS STATUTE.

A proceeding against a stockholder by motion for execution against him after recovery of a judgment against the corporation, and return of execution nulla bona, as provided for by the Kansas statute, is a civil action, within the fair meaning of the statute of limitations, and the defense of limitation may be invoked therein.

5. CORPORATIONS—PROCEEDING AGAINST STOCKHOLDER—EQUITABLE DEFENSES.

In a proceeding against a stockholder in a federal court, by motion for execution against him after the recovery of a judgment at law against the corporation and return of execution nulla bona, as provided for by the Kansas statute, the stockholder cannot interpose as a set-off a claim against the corporation, which does not constitute a legal defense as against the plaintiff, and can only be availed of by a suit in equity.

In Error to the Circuit Court of the United States for the District of Kansas.

This is a proceeding which was begun by E. B. Crissey, the plaintiff in error, against E. N. Morrill and Alexander Caldwell, the defendants in error, who were stockholders of the Interstate Loan & Trust Company, to enforce a liability imposed upon them as stockholders under and by virtue of the laws of the state of Kansas, where the Trust Company was incorporated and had its domicile. The lower court made a special finding of facts, from which we have extracted such facts as are deemed material to the correct decision of the questions that we have to determine. The Interstate Loan & Trust Company (hereafter termed the "Trust Company") was incorporated under the statutes of the state of Kansas on July 22, 1885. Its business consisted principally in loaning money on real estate security, taking from the borrower bonds which the company would transfer to purchasers guarantying the prompt payment of the interest thereon as it matured, and the payment of the principal of the bonds within two years from the date of their maturity. E. N. Morrill, one of the defendants in error, became the owner of 20 shares of stock in the Trust Company on June 29, 1887, and remained a stockholder at all times thereafter, until this proceeding was begun against him on December 16, 1898. Alexander Caldwell, the other defendant in error, became a stockholder in the company on June 6, 1887, by the purchase of 20 shares of stock, and remained such stockholder from that time forward until this proceeding was instituted on December 16, 1898. The Trust Company became financially embarrassed as early as the month of July, 1887, and on October 27, 1888, a special meeting of the stockholders was called to be held on November 12, 1888. At this meeting the by-laws of the company were amended, reducing the number of trustees from 13 to 5, any 3 of whom should constitute a quorum for the transaction of business; and on November 14, 1888, the trustees being of the opinion that it was impracticable to transact other business besides that of winding up its affairs, adopted a resolution to the effect that the Trust Company proceed to wind up its business with the least possible delay and expense, with a view to its final dissolution, and that it should not seek any new business, but pay and adjust its debts as soon as possible, and that when such debts were paid should make such dividends as might be practicable among its stockholders.

¶ 3. See Limitation of Actions, vol. 33, Cent. Dig. §§ 713, 714.

From that time forward the Trust Company transacted no business whatsoever save such as tended to wind up its affairs. In the year 1898 the property and assets of the company were, by order of court, placed in the hands of a receiver, for further administration, who appears to have been appointed by the Circuit Court of the United States for the District of Kansas.

Among the bonds secured by mortgage, which the Trust Company had obtained and negotiated with a guaranty on its part to pay the interest as it accrued and to pay the principal of the bond within two years from maturity, was one executed by August Sire and wife, dated July 1, 1887, for the sum of $2,000, due in seven years from date, with interest at the rate of 7 per cent. per annum, represented by interest notes attached thereto. The Trust Company also acquired and negotiated, with the same guaranty of payment, another bond secured by a mortgage which was executed by James W. Wells and wife, February 1, 1887, for the sum of $700, and was due five years after date. It also acquired and negotiated in the same manner another bond executed by Shuble Y. Seeds and wife, dated February 1, 1887, for $1,450, due five years after date; also another bond executed by Robert Dawson and wife, for $700, dated April 1, 1887, due five years thereafter. The several bonds last mentioned, executed by Sire and wife, Wells and wife, Seeds and wife, and Dawson and wife, were acquired and became the property of E. B. Crissey, the plaintiff in error, who brought an action thereon in the Circuit Court of the United States for the District of Kansas, and recovered a judgment against the Trust Company, which had negotiated the same, on December 31, 1897, for the sum, in the aggregate, of $6,792.20. Execution was duly issued upon this judgment,.and was returned nulla bona on January 6, 1898. Thereafter, on December 16, 1898, Crissey, as the owner of said judgment, filed a motion for execution against the defendants, Morrill and Caldwell, to enforce their liability as stockholders. The laws of Kansas (Gen. St. Kan. 1889, par. 1192) contain the following provision, in pursuance of which the present proceeding appears to have been inaugurated: "If any execution shall have been issued against the property or effects of a corporation except a railway or a religious or charitable corporation, and there cannot be found any property whereon to levy such execution, then execution may be issued against any of the stockholders to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; but no execution shall issue against any stockholder except upon an order of court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged; and upon such motion such court may order execution to issue accordingly; or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment."

While the Trust Company was in process of liquidation its acting board of trustees from time to time, subsequent to November 14, 1888, passed resolutions making assessments on stockholders for an amount in addition to the par value of their stock. In response to one of these attempted assessments the defendant Morrill, on June 25, 1892, paid an assessment of 15 per cent. upon his stock, amounting to $300, which was used by the secretary of the Trust Company in paying the current debts of the Trust Company. In the year 1893 the defendant Caldwell, at the solicitation of persons who then had the affairs of the Trust Company in charge, advanced the sum of $1,000, which was used in meeting demands against the company, and to secure the repayment of the money so advanced the officers in charge of the company caused to be delivered to said Caldwell two bonds, for the sum of $500 each, dated June 1, 1893. At the conclusion of the trial below the motions for execution were denied, and a judgment was awarded against the plaintiff below for costs. He has brought that judgment to this court for review on writ of error.

L. A. Stebbins (Clinton J. Evans, on the brief), for plaintiff in error.

C. F. W. Dassler (O. H. Dean, on the brief), for defendants in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first question that is presented by the plaintiff in error for our consideration is whether the statute of limitations had run in favor of the defendants in error as respects so much of the unpaid judgment for $6,792.20, in favor of the plaintiff in error, as was made up of the bond which was executed by Sire and wife on July 1, 1887, in the sum of $2,000. The trial court seems to have decided this question in the affirmative, holding that the entire judgment was barred, but it is insisted that such decision was erroneous.

In view of the foregoing statement, it is apparent that the Sire bond was due, on its face, seven years after July 1, 1887, or on July 1, 1894. The guaranty on the part of the Trust Company was a guaranty to pay the principal of the bond "within two years from maturity," so that the guaranty matured July 1, 1896, and this proceeding by motion was inaugurated December 16, 1898, or within three years thereafter. It seems to be conceded on both sides that the period of limitation applicable to the case is three years, so that the bar of the statute was not complete as respects the Sire bond on December 16, 1898, unless it began to run prior to the maturity of the guaranty.

In behalf of the defendants in error it is contended that the statute of limitations began to run in favor of the stockholders, as respects all outstanding debts of the Trust Company, whether matured or unmatured, at the expiration of one year after November 14, 1888, when the resolution to go into liquidation was adopted and the corporation ceased to transact further business, and that such debts, so far as stockholders are concerned, became fully barred at the end of three years thereafter; to wit, on November 14, 1892. This contention is based on certain decisions of the Supreme Court of Kansas, notably Cottrell v. Manlove, 58 Kan. 405, 49 Pac. 519; First National Bank of Atchison, Kansas, v. King, 60 Kan. 733, 57 Pac. 952; and Brigham v. Nathan, 62 Kan. 243, 62 Pac. 319. Inasmuch as these decisions deal with the construction of local statutes, they are binding, as a matter of course, upon this court in so far as they affect the question which we have to determine. In the first of these decisions (Cottrell v. Manlove) it was held, in substance, that the three-year limitation period begins to run in favor of stockholders from the date of corporate dissolution, and that where a corporate creditor had the right, by virtue of a local statute (vide Gen. St. Kan. 1889, par. 1204), to bring an action against stockholders because the corporation had become dissolved, leaving its debts unpaid, and also had the right, under another local statute heretofore quoted (vide Gen. St. Kan. 1889, par. 1192), to proceed by motion for an execution against stockholders after recovering a judgment against the corporation and issuing an execution thereon, and he adopted the latter remedy in place of the former, that the operation

125 F.—56

of the statute of limitations was not thereby suspended until he had procured a judgment against the corporation, but that the statute began to run from the date of corporate dissolution. In the same case it was held, in substance, that the statute of the state permitting stockholders of a corporation to be sued for corporate indebtedness if the corporation becomes dissolved, leaving debts unpaid, applies to corporate debts maturing after the dissolution as well as to those which had become due and payable at the time of the dissolution. In the second of the above cases (First National Bank of Atchison v. King) it was held, in substance, that the right of action in favor of the creditors of a corporation, as against stockholders, accrues, and that the statute of limitations begins to run in favor of stockholders, at the expiration of one year after the corporation has ceased to transact business, and not after such suspension of business has been shown or determined in some judicial proceeding. In the third case above cited (Brigham v. Nathan) it was held, in substance, that, within the meaning of section 1268 of the General Statutes of Kansas for 1899, a corporation becomes dissolved for the purpose of enabling creditors thereof to bring actions against stockholders, provided it has ceased for one year to transact all business for which it was organized, and in the meantime has confined itself to the doing of such acts as were incidental and necessary to the final closing up of its affairs. It appeared in that case that the corporate creditor, at the time the corporation became dissolved, had no matured obligation against the corporation, having surrendered the matured obligation, and taken a new one, which had not become due at the date of the dissolution. It was held, however, that, notwithstanding the immaturity of his demand against the corporation, he had an immediate right of action against the stockholder, and that the statute of limitations began to run in favor of the stockholder at the expiration of one year after the company suspended business. See, also, the cases of Sleeper v. Norris, 59 Kan. 555, 53 Pac. 757, and Fox v. Bank, 9 Kan. App. 18, 57 Pac. 241, which enunciate substantially the same doctrine.

It is clear, therefore, that under the laws of the state of Kansas, as construed by its highest court, the fact that a debt of a corporation has not become due at the time it becomes dissolved (that is, after the expiration of one year from the time it ceases to transact business and goes into liquidation) does not prevent the creditor from pursuing stockholders. It is due by force of the statute permitting them to be sued, so far as stockholders are concerned, as soon as the corporation becomes dissolved, although not due as respects the corporation, and the statute of limitations begins to run immediately in favor of stockholders, and becomes a bar at the end of three years. Since these decisions were rendered, however, and since this case was decided by the learned trial judge, another question that is wholly analogous to the one which arises in the case at bar has been decided by the Supreme Court of the state of Kansas in McHale v. Moore, 71 Pac. 522, 524. In that case an action was brought to compel a stockholder to pay a corporate debt which consisted in part of notes that had been executed by the corporation

itself, and in part of a note the payment of which the corporation had guarantied. This latter note was executed May 1, 1890, but did not mature until May 1, 1900. The corporation suspended the transaction of business in March, 1892, and never thereafter resumed business. Proceedings against the stockholder were begun on March 21, 1901. As respects the guarantied note, the court held that the statute of limitations had not run in favor of the stockholder. It remarked that the corporation "had guarantied payment of the obligation when it became due, but whether it would become a debt against the [corporation] could not be known until the time of payment had arrived, and either payment or default had been made by the [maker of the note]. Until that time the holder of the obligation was not a creditor of the [corporation], but was a creditor of the [maker of the note]. The statute did not contemplate that stockholders should be required to respond for anything short of a debt of the corporation, and certainly until the relation of debtor and creditor arose between the claimant and the corporation no right of action accrued against the stockholder." It follows, as a matter of course, that the same may be said of the Sire bond which figures in the case at bar. The holder of that bond did not become a creditor of the Trust Company until the guaranty matured, on July 1, 1896. It was not a debt of the corporation until that time, and the statutory bar was not complete on December 16, 1898, when this action against the stockholder was inaugurated.

Counsel for the defendants in error suggest that because the plaintiff in error saw fit to recover a judgment against the Trust Company on the Sire bond, and the other bonds heretofore mentioned, there can be no inquiry, in this proceeding by motion against the stockholder, into the origin of any part of the indebtedness upon which the judgment is founded, for the purpose of showing that this proceeding against the stockholder is not barred by limitation. With respect to this contention we observe that it may be conceded that the corporation cannot go behind the judgment for the purpose of establishing a defense which it did not make when the judgment was recovered, but we perceive no substantial reason why the judgment creditor in this collateral proceeding against the stockholder should not be permitted to show that a part of the indebtedness, now merged in the judgment, became a corporate debt at such a late day that the statute of limitations cannot be invoked by the stockholder in a proceeding against him, especially when the stockholder seeks to avail himself of the statute of limitations as a defense. The question whether the demands now merged in the judgment against the corporation were recoverable from stockholders was not one of the issues which was tried in the action brought against the Trust Company, nor could such an issue have been tried in that case; nor do we perceive that evidence tending to show the precise dates when the respective demands became debts of the corporation has any tendency to impeach the judgment. We are of opinion, therefore, that the suggestion of counsel to the effect last stated is without merit, and that the trial court properly found when the respective demands did become debts of the corporation for

884 125 FEDERAL REPORTER.

the purpose of making a proper application of the statute of limitations. Ward v. Joslin, 186 U. S. 142, 152, 22 Sup. Ct. 807, 46 L. Ed. 1093.

We entertain no doubt that the lower court correctly held, as respects the other demands which entered into and formed a part of the judgment for $6,792.20, that they were barred by limitation. These other bonds, which were executed by Seeds and wife, Wells and wife, and Dawson and wife, matured against the makers in the early part of the year 1892. The guaranty thereon matured in the early part of the year 1894, and they became corporate debts at that time. The statute of limitations accordingly began to run as soon as they became corporate debts, and the bar of the statute became complete in favor of the stockholders in the early part of the year 1897, long before this proceeding was inaugurated, inasmuch as the Trust Company, under the facts as found by the trial court and under the Kansas decisions, became dissolved as early as November 14, 1889, by virtue of its having ceased to transact any business for a year previous thereto. The decisions heretofore cited leave no room for doubt that these debts were effectually barred as against stockholders of the Trust Company before this proceeding was commenced, and the lower court was right in so holding.

The point appears to have been made on the trial below, but it has not been pressed by the defendants in error on appeal, that the principal debt, in consequence of the nonpayment of the interest thereon, became due long prior to July 1, 1894, and that the guaranty thereon matured long prior to July 1, 1896, because the Sire bond contained a provision, in substance, that, if default was made in the payment of any interest thereon for the space of 10 days after the same became due and payable, then the principal of the bond, "at the option of the payee," should at once become due and payable without further notice. This contention, in our opinion, is untenable for the reason that the finding of facts does not show that the owner and holder of the Sire bond exercised his option to declare the principal due before July 1, 1894, the day specified in the bond. Moreover, this court has recently held in Keene Five Cent Savings Bank v. Reid et al. (C. C. A.) 123 Fed. 221, that when a note or bond contains a provision that the principal thereof shall become due and payable if the interest thereon is not paid when due, such a provision is not self-operative, but is intended for the benefit of the payee, and that he must take some affirmative action to mature the obligation in advance of the period of maturity specified on the face of the obligation. No such affirmative action on the part of the payee of the Sire bond is shown in the present case, and it does not appear, therefore, that the bond became due prior to July 1, 1894.

Learned counsel for the plaintiff in error make the following additional contentions in opposition to the judgment: First, that the defendants below failed to prove that they were residents of Kansas during the statutory period of limitation, so as to be entitled to the benefit of the statute; second, that this proceeding is a motion for execution against a stockholder, and that in such a proceeding the plea of limitation is not available; and, third, that the set-offs which

the special finding of facts tends to establish in favor of Morrill and Caldwell are not available in this proceeding.

Concerning the first of these contentions, it is sufficient to say that when the defendants invoked the statutory bar of three years as a defense it was the duty of the plaintiff below, if the bar was not applicable because they had concealed themselves or been absent from the state, to establish that fact by competent evidence. When it appears on the trial of a case, where the statute of limitations is pleaded, that the indebtedness became due beyond the statutory period, the courts do not presume, in favor of the plaintiff who seems to have been negligent, that the defendant has concealed himself to avoid the service of process or has been absent from the state, but require the plaintiff to make such proof. If the defendant proves a state of facts which brings him within the operation of a general rule, he need not prove further that his case does not fall within an exception that would deprive him of the benefit of the rule, but may call upon the plaintiff to prove affirmatively that his case is within the exception and that the general rule is not applicable. This is the general doctrine (State of Missouri, to the use of Ladd, v. Clark et al., 42 Mo. 519, 523; McMillan v. Cheeney, 30 Minn. 519, 521, 16 N. W. 404); and it seems to be a doctrine which is fully recognized by the Supreme Court of Kansas (Young v. Whittenhall, 15 Kan. 579, 581). In that case the court observed "it has always been the duty of the plaintiff, both in courts of law and in courts of equity, to plead the exceptions where the question of the statute of limitations has been properly raised by the defendant. And it never was the duty of the defendant, in such a case, to negative the exceptions. Zane v. Zane, 5 Kan. 137."

With reference to the second contention mentioned above, we observe that it is a highly technical view that because the statute of Kansas provides that "civil actions can only be commenced within the period prescribed in this article after the cause of action shall have accrued" therefore this proceeding, which the statute above quoted denominates a "motion," is not an action in which the party proceeded against can avail himself of the statute of limitations. It is obvious that if he cannot plead the statute in defense to such a motion he is deprived of the benefit of the statute altogether, since when an action is brought against a corporation to reduce a demand to judgment no stockholder is entitled to intervene and defend on the ground that the demand cannot be enforced as against stockholders if a judgment is recovered. Such a defense would not be tolerated, and for that reason when a judgment is recovered against the corporation, and an execution has been returned unsatisfied, the stockholder, according to the plaintiff's theory, would be left powerless to invoke the statute. We are of opinion that the point urged is not tenable; that a proceeding by motion against a stockholder after the recovery of a judgment against the corporation is, within the fair purview of the statute, a "civil action," although it is otherwise termed a motion. The proceeding possesses all of the characteristics of a civil action. The stockholder is given reason-

able notice to appear and defend, and disprove, if he can, the facts stated in the motion, and the trial proceeds as in ordinary cases.

The third contention, that the defendants below are not entitled to interpose set-offs in this proceeding, is entitled to more weight. It seems to be the practice in Kansas to permit stockholders to avail themselves of any set-offs which they happen to have as a defense to motions of the present character (Pierce v. Topeka Commercial Security Co., 60 Kan. 164, 55 Pac. 853; Van Pelt v. Strickland, 60 Kan. 584, 57 Pac. 498; Abbey v. Long, 44 Kan. 688, 24 Pac. 1111; Campbell v. Reese, 8 Kan. App. 518, 56 Pac. 543); but when this right of set-off is asserted in the federal courts other considerations present themselves. The demands which the defendants below respectively seek to offset are not demands against the plaintiff on account of which he could be sued in an action at law, but they are claims against the judgment debtor, to wit, the Trust Company, for which reason they cannot truly be said to be legal defenses to the plaintiff's cause of action, but are rather demands against the Trust Company, which the defendants are equitably entitled to have deducted from the amount of their ascertained stockholders' liability. Being themselves creditors of the corporation, they are equitably entitled to be first paid before they are called upon to discharge the claims of other creditors that are founded upon no higher equity.

It is a well-settled doctrine in the federal courts that defenses which are essentially of an equitable character cannot be interposed by the defendant in an action at law. In the federal courts the practice in equity is regulated by rules of procedure such as may be formulated from time to time by the Supreme Court of the United States, and such rules of procedure are not subject to modification by the legislatures of the several states nor by the action of state courts. Missouri, Kansas & Texas Tr. Co. v. Krumseig, 77 Fed. 32, 23 C. C. A. 1, 9; Bennett v. Butterworth, 11 How. 669, 674, 13 L. Ed. 859; Thompson v. Railroad Company, 6 Wall. 134, 137, 18 L. Ed. 765; Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358.

We are of opinion, therefore, that the set-offs in favor of the defendants below, which the finding of the lower court tends to establish, and, as we think, does establish, were not admissible as a defense in favor of the respective defendants, the same being set-offs of an equitable character, and this being an action at law. To avail themselves of these set-offs, the defendants must seek the aid of a court of equity. A court of equity undoubtedly possesses adequate power to render them effective by ascertaining the amount of the respective set-offs, and decreeing that they be deducted from the liability of the respective stockholders, and that the plaintiff in this proceeding only recover such balance, if any, as may remain after the set-offs are discharged.

The judgment below is accordingly reversed, and the case is remanded to the Circuit Court, with instructions to ascertain the amount which the plaintiff is entitled to recover from the respective defendants on account of his ownership of the Sire bond in the sum of $2,000, and to enter judgment in the plaintiff's favor against the respective defendants for such amounts when duly ascertained. The

defendants will have leave to apply to the Circuit Court by a bill in equity to have the amount of their respective set-offs adjudicated and deducted from the amount of their liability as stockholders, provided the amount thereof cannot be fixed by agreement of the parties.