## HARRISON v. REMINGTON PAPER CO.

### (Circuit Court of Appeals, Eighth Circuit. August 22, 1905.)

### No. 2,129.

1. CORPORATIONS—STOCKHOLDERS' DOUBLE LIABILITY UNDER KANSAS CONSTITUTION AND STATUTES—RULES OF LAW.

Const. Kan. art. 12, § 2, which provides that dues from corporations shall be secured by the individual liability of stockholders to an amount equal to the stock owned by each of them, is self-executing, but the remedy at common law may be enforced only by action at law or suit in equity after judgment and return of execution nulla bona against the corporation or an equivalent exhaustion of the property of the company. Sections 1200, 1204, Gen. St. Kan. 1889, granted to a creditor of a corporation an individual action against a stockholder upon the suspension of the business of the corporation for more than a year. Section 1192, Gen. St. Kan. 1889, granted to the creditor of a corporation the right to an execution against a stockholder upon the return of an execution unsatisfied upon a judgment against the corporation. Chapter 10, p. 27, Laws Kan. 1898, repealed sections 1200, 1204, Gen. St. 1889, and substituted for the action there granted a suit in equity by a receiver to be appointed after a judgment against the corporation and the distribution of the proceeds which the · receiver should collect from the stockholders pro rata among all the creditors thereof. *Held*, this repealing act is unconstitutional and void against contracts made and rights which accrued before its passage. It lessened the value of such contracts, and tended to postpone their enforcement and thereby impaired their obligations.

2. SAME—LIABILITY OF STOCKHOLDERS FOUNDED UPON CONTRACTS.

A stockholder of a corporation, by his subscription for stock or by his acceptance of it, agrees with the corporation and its creditors that he will perform the obligations and discharge the duties imposed upon a stockholder by the Constitution, the statutes, and the law then in force, and his liability to creditors springs from that contract.

3. CONSTITUTIONAL LAW—WHEN REPEAL OR CHANGE OF REMEDIES IMPAIRS OBLIGATION OF CONTRACT.

The remedies for the enforcement of a contract existing in a state when the contract is made are a part of its obligation. Any repeal or change of any of these remedies, which substantially obstructs or retards its enforcement or lessens the value of the agreement, impairs its obligation and is unconstitutional and void. But a repeal or change of remedies, which does not substantially diminish the value of the agreement or seriously retard or obstruct its enforcement, escapes the inhibition of the Constitution and is valid.

4. JUDGMENT—MERGER OF NOTES—COMPETENT EVIDENCE OF DEBT.

While a judgment upon promissory notes merges them therein, so that the owner of the judgment may not maintain an action against the judgment debtor upon them, they still remain competent evidence of the existence of the debt which they represent in all other actions.

5. ACTION—SPLITTING CAUSES OF—DOUBLE LIABILITY OF STOCKHOLDER.

The contract to pay the debts of the corporation is the basis of the double liability, and the action to enforce it is indivisible. The cause of action between the same parties is the same, whether it is upon one or several of the shares of stock owned by the latter, and it may not be split.

6. COURTS—CONSTRUCTION OF STATE STATUTES—DECISIONS OF THE COURTS OF THE STATE.

The construction of the Constitution and the statutes of a state by the highest judicial tribunal of the state which enacted them is decisive in the federal courts, in the absence of any question of general or com-

140 F.—25

mercial law or of right under the Constitution of the United States, and their interpretation by the courts of other states is immaterial.

[Ed. Note.—State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

**7. LIMITATION OF ACTIONS—VOLUNTARY DISMISSAL—CONSTRUCTION OF CIV. CODE KAN. § 23.**

A voluntary dismissal without prejudice to a future action is a failure otherwise than upon the merits, within the meaning of section 23 of the Civil Code of Kansas, which provides that if an action is commenced in time, and the plaintiff fails in it otherwise than upon the merits, he may commence a new action within one year after the failure.

**8. COURTS—FEDERAL COURT HAS JURISDICTION OF NEW ACTION WHERE FORMER ACTION WAS IN STATE COURT.**

Where the first action was prosecuted in a state court, a new action may be maintained in the federal court. The effect of section 23 is to make an exception to the general statute of limitations of the state, which is justiciable in the federal as well as in the state court.

**9. SAME—FEDERAL COURT—JURISDICTION TO ENFORCE STATUTORY RIGHTS AND REMEDIES PLENARY.**

Rights created and remedies provided by the statutes of the states to be pursued in the state courts may be enforced and administered in the national courts either at law, in equity, or in admiralty, as the nature of the rights and the remedies may require, where the citizenship of the parties and the amounts involved bring the actions within the provisions of the Constitution and the acts of Congress.

**10. JUDGMENT—RES ADJUDICATA—RULINGS IN ACTIONS DISMISSED WITHOUT PREJUDICE.**

Rulings and decisions in the course of an action which is subsequently dismissed without prejudice to a future action raise no estoppel. The only adjudication by such a judgment is that nothing is adjudged and that the parties are as free to litigate the issues as though the action had not been commenced.

**11. SAME—RULES OF ESTOPPEL BY JUDGMENT.**

When the second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question which was or might have been presented in the former.

**12. SAME—SECOND SUIT UPON DIFFERENT CAUSE.**

When the second suit is upon a different cause but between the same parties as the first, the judgment in the former action operates as an estoppel in the latter as to every point and question which was actually litigated and determined in the first action; but it is not conclusive relative to other matters which might have been, but were not, litigated and decided.

**13. SAME—BURDEN OF PROOF OF IDENTITY OF ISSUES LITIGATED UPON HIM WHO ASSERTS IT.**

Where the record is such that there is or may be a material issue, question, or matter in the second suit upon a different cause of action, which may not have been raised, litigated, and decided in the former action, the judgment therein does not constitute an estoppel from litigating this issue, question, or matter, unless by pleading or proof the party asserting the estoppel establishes the fact that the issue, question, or matter in dispute was actually and necessarily litigated and determined in the former action.

**14. SAME—IDENTITY OF CAUSES OF ACTION—TEST.**

The test of the identity of causes of action is the identity of the facts essential to their maintenance.

15. SAME—CAUSE OF ACTION UNDER SECTION 1192 NOT THE SAME AS THAT UNDER SECTIONS 1200 AND 1204.

A cause of action to enforce the double liability of a stockholder by motion in the event of an unsatisfied execution upon a judgment against the corporation, under section 1192, Gen. St. 1889, is not the same as one between the same parties to enforce such a liability on the ground that the corporation has suspended business for a year, under sections 1200 and 1204, because the facts of a judgment and an unsatisfied execution are essential to the former and immaterial to the latter, and the fact of suspension of business for a year is indispensable to the latter and irrelevant to the former.

16. SAME—COMMENCEMENT OF ACTION UPON ONE CAUSE A BAR TO AN ACTION UPON THE OTHER.

Under the decisions of the Supreme Court of Kansas the commencement of an action upon one of these causes is a bar to the prosecution of an action between the same parties to recover a liability of the stockholder in the same corporation under the other.

17. SAME—JUDGMENT UPON ONE CAUSE DOES NOT ADJUDICATE THE ISSUES IN AN ACTION UPON THE OTHER.

A judgment of denial of the motion for an execution and of dismissal of the action under section 1192, Gen. St. 1889, in which the defense of a prior action under sections 1200 and 1204 was pleaded and found, raises no estoppel against the plaintiff from litigating the issues presented in an action between the same parties under sections 1200 and 1204, in which that defense was not available, where the record does not disclose that the judgment upon the motion was based upon a decision of any of the issues in the latter case.

18. EVIDENCE—BOOKS OF CORPORATIONS INCOMPETENT TO PROVE PARTIES STOCKHOLDERS—BUT RECEIPTS AND ADMISSIONS SIGNED BY THEM COMPETENT.

The books and records of a private corporation are not competent evidence against third persons, in the absence of proof of their knowledge and assent to them, to establish their relation of stockholders to the corporation or to prove other contracts between them and it. But admissions of a party against his interest, inscribed upon the books of a corporation and signed by him, are as competent and persuasive evidence against him as though they were written elsewhere.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Kansas.

T. W. Harrison and Charles Blood Smith (James F. Getty, W. H. Rossington, and J. S. West, on the brief), for plaintiff in error.

E. S. Quinton (A. B. Quinton, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and ADAMS, District Judge.

SANBORN, Circuit Judge. This writ of error challenges a judgment against T. W. Harrison, the defendant below, on account of his double liability as a stockholder of the Topeka Capital Company, a corporation of the state of Kansas, which was not a railroad corporation and was not organized for either religious or charitable purposes. The statement and discussion of the law and the facts in this case accordingly relates to corporations organized for pecuniary profit of the nature of the Topeka Company only. The plaintiff alleged and endeavored to prove that Harrison was the owner of 18 shares of the stock of the Topeka Company of the par value of $500 each on November 18, 1895,

when it suspended business, and demanded judgment against him for $9,000, but the jury charged him with liability on account of only 11 shares, and judgment was rendered against him for but $5,500.

The Constitution of the state of Kansas (section 2, art. 12) provides that dues from corporations shall be secured by the individual liability of stockholders to an additional amount equal to the stock owned by each of them, and by such other means as shall be provided by law. This provision of the Constitution is self-executing, so that in the absence of other means provided by statute a creditor of a corporation would not be remediless. Whitman v. Bank, 176 U. S. 559, 565, 20 Sup. Ct. 477, 44 L. Ed. 587; Willis v. Mabon, 48 Minn. 140, 149, 153, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. Rep. 626. The fact that courts of some of the states have reached a different conclusion has not been overlooked. Woodworth v. Bowles, 61 Kan. 569, 60 Pac. 331, and cases there cited. But this contract was made before the highest judicial tribunal of Kansas passed upon the question and the decision of the Supreme Court concludes this issue. Burgess v. Seligman, 107 U. S. 20, 27, 2 Sup. Ct. 10, 27 L. Ed. 359; Clapp v. Otoe County, 45 C. C. A. 579, 582, 104 Fed. 473, 476; Speer v. Board, etc., 88 Fed. 749, 760, 32 C. C. A. 101, 113. The liability of stockholders under this Constitution is, however, collateral to that of the corporation. It is based upon the contract of the stockholder that he will pay the debts of the corporation to the amount of the stock held by him if the corporation fails to discharge them. In the absence of statutory remedies this liability could be enforced at law only after judgment against the corporation and the return of an execution nulla bona or an equivalent exhaustion of the property of the corporation (Flash v. Conn, 109 U. S. 371, 380, 3 Sup. Ct. 263, 27 L. Ed. 966; Wright v. McCormack, 17 Ohio St. 86, 95; Patterson v. Wyomissing Mfg. Co., 40 Pa. 117; Appeal of Means, 85 Pa. 75, 79; Thompson on Liability of Stockholders, § 312), and in equity only by a suit for the benefit of all the creditors alike (Pollard v. Bailey, 20 Wall. 520, 22 L. Ed. 376; Terry v. Little, 101 U. S. 216, 25 L. Ed. 864; Patterson v. Lynde, 106 U. S. 519, 1 Sup. Ct. 432, 27 L. Ed. 265).

In the year 1868 the Legislature of the state of Kansas, pursuant to the provision of the Constitution which has been cited, provided other means of securing the dues of corporations by law. It enacted that when a corporation suspended business for more than one year it should be deemed to be dissolved, and that when it was dissolved suits might be brought by its creditors against any person or persons who were its stockholders at the time of its dissolution, without joining the corporation in such suits (Gen. St. 1889, §§ 1200, 1204), and that, if an execution were returned unsatisfied upon a judgment against the corporation, an execution might be issued upon such a judgment, upon a motion of a creditor, against any of the stockholders of the corporation for an amount equal to the amount of the stock held by him, or that an action against him might be maintained for the same amount upon the unsatisfied execution (Gen. St. 1889, § 1192). The action upon the unsatisfied execution would probably have been maintainable at common law in the absence of this statute. But this legis-

lation imposed two new obligations upon, and granted two new remedies against, stockholders—the obligation to pay the debts of the corporation upon the suspension of its business for one year, and the action to compel this payment, and the obligation to pay the debts of the corporation upon the return of an execution against it unsatisfied and the motion for an execution to compel such payment. The liabilities and remedies thus provided are personal and several, and any creditor is empowered to invoke either against any stockholder. Pierce v. Security Co., 60 Kan. 164, 166, 55 Pac. 853; Abbey v. Dry Goods Co., 44 Kan. 415, 418, 24 Pac. 426; Anglo-American Land, M. & A. Co. v. Lombard (C. C. A.) 132 Fed. 721, 729. The cause of action in the event of a suspension of business differs so radically from that in the case of an unsatisfied execution that the courts of Kansas have held that the assertion of one is the abandonment of the other, and a bar to an action upon it for the same liability. Remington Paper Co. v. Hudson, 64 Kan. 43, 46, 67 Pac. 636; McGlinchy v. Bowles (Kan.) 75 Pac. 123.

The defendant below became a stockholder, and the plaintiff a creditor, of the Topeka Capital Company, and the latter suspended business on November 18, 1895, in this state of the law, and this action has been brought under sections 1200 and 1204 to enforce the defendant's double liability in view of those facts. On January 11, 1899, after the cause of action had accrued, but before suit had been brought upon it, sections 1200 and 1204 were repealed, and section 1192 was so amended that the only statutory remedy to enforce the double liability of a stockholder which remained was the appointment of a receiver after a return of nulla bona upon an execution issued upon a judgment against the corporation, the collection of the amount from the stockholder by the receiver, and the latter's distribution of it pro rata among all the creditors of the corporation. Laws Kan. 1898, pp. 34–36, c. 10, §§ 14, 15, 17, 18. On March 11, 1903, the Legislature of Kansas repealed the sections of chapter 10 of the Laws of 1898 which authorized a receiver to enforce the double liability of stockholders, so that there no longer remained any statutory remedy to enforce this liability, but provided that this repeal should not effect the liability of stockholders of banking corporations of that state. Laws Kan. 1903, p. 284, c. 152.

Counsel for the defendant insisted in the court below, and argue here, that the act of 1899 was fatal to this action; that it struck down the only remedy which the plaintiff is attempting to pursue, and destroyed its right of action. If this position can be maintained, the judgment must be reversed, and it will be useless to state or consider the other questions which the record presents. For that reason this contention will first be considered. It is conceded that the argument of counsel is impregnable unless the repealing act of 1899 is either ineffectual, because unconstitutional, or inapplicable in a case in which the stockholder's contract was made before the act of 1899 was passed. The basis of the stockholder's liability and of the action to enforce it is his contract to pay the debts of the corporation. The Constitution, the statutes under which the corporation is organized, and the

established rules of law in force when he becomes a stockholder, are read into and become a part of his contract. By his subscription for the stock, or by his receipt and acceptance of it, he solemnly agrees, in consideration of the benefits derived from its ownership, that he will faithfully perform the obligations and discharge the duties imposed upon a stockholder by the Constitution, the statutes, and the law. When the defendant in this case took his stock, therefore, he made a contract with the Topeka Company and its creditors under the Constitution of Kansas and sections 1200 and 1204, which were then in force, that whenever that corporation suspended business for more than one year he would pay the debts of the corporation which were then existing to an amount not exceeding the par value of his stock. Bank v. Hawkins, 174 U. S. 365, 370, 19 Sup. Ct. 739, 43 L. Ed. 1007; Deweese v. Smith, 45 C. C. A. 408, 411, 106 Fed. 438, 441; Whitman v. Bank, 176 U. S. 559, 20 Sup. Ct. 477, 44 L. Ed. 587; Anglo-American Land, M. & A. Co. v. Lombard (C. C. A.) 132 Fed. 721, 729.

The act of 1899, if applicable to prior contracts, struck down the plaintiff's individual cause of action against the stockholder which accrued upon this contract upon the dissolution of the corporation and left him nothing but a right to a proportionate share with all the other creditors of the amount which a receiver, who could not be appointed until after a judgment and an unsatisfied execution against the corporation, might collect of the stockholder. The Constitution of the United States prohibits the passage by a state of any law which impairs the obligation of a contract (article 1, § 10). But counsel for the defendant argue that this act does not violate this inhibition, because it merely effects a harmless substitution of one remedy for another, and to sustain this position they cite Fourth National Bank v. Francklyn, 120 U. S. 755, 756, 757, 7 Sup. Ct. 757, 30 L. Ed. 825; Story v. Furman, 25 N. Y. 214, 224; Campbell v. Mining Co., 27 C. C. A. 646, 649, 83 Fed. 643, 646, and other cases of like character. In the case first cited the Legislature had substituted for the seizure of the person or property of a stockholder on a judgment and execution against the corporation an action at law upon the judgment against the corporation or a suit in equity upon it. Before this substitution the creditor had no right of action at law against the stockholder upon his original liability before a judgment against the corporation, as he had in the case before us, and the Supreme Court held that the change of remedies did not materially lessen the rights of existing creditors, and hence that it was not violative of the Constitution.

In Story v. Furman, 25 N. Y. 214, 224, the creditor had no right of action against the stockholder upon his original liability until after judgment against the corporation, and the effect of the legislation there in question was merely to transfer from the creditor the right to maintain the suit in equity upon a judgment against the corporation for the benefit of himself and all other creditors to trustees for their benefit, and the legislation was sustained for the same reason.

In Campbell v. Mining Co., 27 C. C. A. 646, 649, 83 Fed. 643, 646, this court held upon the same ground that a statute which repealed the grant of the privilege of a second trial in an action of ejectment im-

paired the obligation of no contract and lessened no vested right of litigants in pending cases which had not advanced to their first trials, but otherwise in cases in which verdicts had been rendered. The legislation in question thus administered did not delay or obstruct the enforcement of any right or a fair trial of any controversy. It is, however, far from true that every repeal, modification, or substitution of remedies for the enforcement of contracts is exempt from the constitutional inhibition of the impairment of the obligations of contracts.

In Green v. Biddle, 8 Wheat. 1, 15, 5 L. Ed. 547, it was contended on the one hand that the laws of Kentucky under consideration impaired the obligation of the compact with Virginia in 1789, and on the other that this legislation only regulated the remedy, and did not affect the obligation. The court said:

"It is no answer that the acts of Kentucky now in question are regulations of the remedy, and not of the right to the lands. If those acts so changed the nature and extent of existing remedies as materially to impair the rights and interests of the owner, they are just as much a violation of the compact as if they directly overturned his rights and interests."

In Bronson v. Kinzie, 1 How. 310, 315, 11 L. Ed. 143, the argument was that a state law passed after the execution of a mortgage, which continued the equitable estate of the mortgagor 12 months after a sale under a decree in chancery, and prevented a sale for less than two-thirds of the appraised value of the property, was a mere regulation of the remedy for the foreclosure of the mortgage. But the Supreme Court held it violative of the Constitution, and said:

"Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy, or directly on the contract itself. In either case it is prohibited by the Constitution."

In Brine v. Insurance Co., 96 U. S. 627, 637, 24 L. Ed. 858, the Circuit Court of the United States decreed the immediate sale of mortgaged property in disregard of the law of a state in existence at the time the mortgage was made, to the effect that the mortgagor should be allowed 12 months after the sale in which to redeem his property therefrom. The Supreme Court reversed the decision, and said:

"At all events, the decisions of this court are numerous that the laws which prescribe the mode of enforcing a contract, which are in existence when it is made, are so far a part of the contract that no changes in these laws which seriously interfere with that enforcement are valid, because they impair its obligation within the meaning of the Constitution of the United States."

In McCracken v. Hayward, 2 How. 608, 611, 612, 11 L. Ed. 397, the validity of a law of the state of Illinois, that a sale of property levied upon under an execution should not be made unless it should bring two-thirds of its valuation according to the opinion of three householders, was challenged. The court held it unconstitutional and void against creditors whose contracts were made before its passage. It said:

"The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made. These are necessarily referred to in all contracts, and form a part of them as the

measure of the obligation to perform them by the one party and the right ac·
quired by the other. There can be no other standard by which to ascertain
the extent of either than that which the terms of the contract indicate, ac-
cording to their settled legal meaning. When it becomes consummated, the
law defines the duty and the right, compels one party to perform the thing
contracted for, and gives the other a right to enforce the performance by the
remedies then in force. If any subsequent law affect to diminish the duty,
or to impair the right, it necessarily bears on the obligation of the contract
in favor of one party, to the injury of the other; hence any law, which in its
operation amounts 'to a denial or obstruction of the rights accruing by a
contract, though professing to act only on the remedy, is directly obnoxious
'to the prohibition of the Constitution."

In Louisiana v. New Orleans, 102 U. S. 203, 206, 26 L. Ed. 132,
Mr. Justice Field, in delivering the opinion of the court, said:

"The obligation of a contract in the constitutional sense is the means pro-
vided by law by which it can be enforced—by which the parties can be
obliged to perform it. Whatever legislation lessens the efficacy of these
means impairs the obligation. If it tend to postpone or retard the enforce-
ment of the contract, the obligation of the latter is to that extent weakened."

In Seibert v. Lewis, 122 U. S. 284, 294, 7 Sup. Ct. 1190, 1194, 30
L. Ed. 1161, a case in which the Supreme Court held that a law of the
state of Missouri, which repealed a statute, in force when certain
county bonds were issued, which gave the remedy of a special tax to
pay the interest and principal on the bonds and substituted a less effect-
ive remedy, violated the prohibition against the impairment of the
obligation of contracts, that court declared:

"It is well settled by the decisions of this court that 'the remedy subsisting
in a state, when and where the contract is made and is to be performed, is a
part of its obligation, and any subsequent law of the state which so affects
that remedy as substantially to impair and lessen the value of the contract
is forbidden by the Constitution, and is therefore void.' Edwards v. Kearzey,
96 U. S. 597, 607, 24 L. Ed. 793."

A more extended review of the authorities upon this question would
not be profitable. A thoughtful consideration of the issue and a care-
ful examination of the decisions have convinced that the true rule, the
rule sustained by reason and established by authority, is this: The
remedies provided in a state for the enforcement of a contract when it
is made are a part of the obligation of the contract. Any repeal or
change of any of these remedies which substantially obstructs or re-
tards the enforcement, or lessens the value of the agreement, impairs
its obligation, and is unconstitutional and void. Any repeal or change
of remedies which does not substantially diminish the value of the
agreement or retard or obstruct its enforcement escapes the inhibi-
tion of the Constitution and is valid. Louisiana v. New Orleans, 102
U. S. 203, 206, 26 L. Ed. 132; Edwards v. Kearzey, 96 U. S. 595, 607,
24 L. Ed. 793; Seibert v. Lewis, 122 U. S. 284, 294, 7 Sup. Ct. 1190,
30 L. Ed. 1161; Green v. Biddle, 8 Wheat. 1, 15, 5 L. Ed. 547; Bronson
v. Kinzie, 1 How. 311, 316, 11 L. Ed. 143; Hoffman v. City of Quincy,
4 Wall. 535, 18 L. Ed. 403; McCracken v. Hayward, 2 How. 608, 612,
11 L. Ed. 397; Howard v. Bugbee, 24 How. 461, 16 L. Ed. 753; Brine
v. Ins. Co., 96 U. S. 627, 637, 24 L. Ed. 858; Hawthorne v. Calef, 2
Wall. 10, 23, 17 L. Ed. 776; Barnitz v. Beverly, 163 U. S. 118, 128,
16 Sup. Ct. 1042, 41 L. Ed. 93.

The repealing act of 1899 deprived the plaintiff of the right to enforce its contract by a separate action against the stockholder immediately upon the suspension of the corporation for one year, without obtaining a judgment against the corporation, a remedy which was furnished for the enforcement of its contract when that agreement was made. The act of 1899 supplied no legal equivalent for this remedy. The proceeding by judgment against the corporation, by the subsequent appointment of a receiver, and by his enforcement of the stockholders' liabilities and his distribution of the proceeds pro rata among all the creditors, was a slower, more complicated, and less effective means of enforcing the contract. The change necessarily lessened the value of the contract and obstructed and postponed its enforcement. If the act of 1899 was retroactive or applicable to stockholders' liabilities incurred before its passage, it was therefore unconstitutional and void as to them and actions to enforce them may still be maintained under sections 1200 and 1204, Gen. St. 1889. Woodworth v. Bowles, 61 Kan. 569, 585, 60 Pac. 331. Moreover, the General Statutes of Kansas provide that a repeal of a statute does not revive a statute previously repealed, nor affect any right accrued under or by virtue of the repealing statute. Gen. St. 1899, § 7009. The plaintiff's right of action under sections 1200 and 1204, Gen. St. 1889, had accrued before the act which purported to repeal them was enacted. The result is that the contention that this action cannot be maintained because the statutory remedy which it invokes was withdrawn by the act of 1899 is untenable, and a consideration of the other questions presented by this record is forced upon our attention. The discussion of these questions necessitates a more extended statement of the history of this litigation.

The Topeka Capital Company was a corporation of the state of Kansas, with a capital stock of 500 shares, of a par value of $500 each. It suspended business on November 18, 1895, and the defendant was a stockholder, and the plaintiff a creditor of that corporation whose debt was evidenced by promissory notes. On October 27, 1899, the plaintiff brought an action against the defendant, No. 20,318, in the district court of Shawnee county in the state of Kansas, to enforce the latter's double liability upon 11 shares of his stock upon the ground that the Topeka Company had suspended business and the Remington Company was a creditor, and the defendant a stockholder of it. On May 3, 1900, in another action in the district court of the same county in which the Remington Company was plaintiff and the Topeka Company was defendant, No. 18,695, judgment was rendered against the latter company upon the debt pleaded in No. 20,318. On August 20, 1900, an execution upon this judgment was returned unsatisfied. On March 31, 1900, the Remington Company made a motion in that action for the issue of an execution upon the judgment against Harrison as a stockholder of the Topeka Company. He answered, there was a trial of the issues, and on June 23, 1902, the motion was denied. On August 6, 1902, the plaintiff filed a supplemental petition in No. 20,318, in which it pleaded its judgment against the Topeka Company in No. 18,695, but did not set forth the issue or return of an execu-

tion thereon. On March 24, 1903, during the trial of No. 20,318, that action was dismissed by the plaintiff without prejudice to a future action.

On March 31, 1903, the Remington Company commenced the action which is the subject of this controversy in the United States Circuit Court for the District of Kansas. It pleaded in its petition that the Topeka Company suspended business on November 18, 1895; that it then owed the Remington Company a debt of $7,509.18, which was evidenced by the promissory notes set forth in No. 20,318; that at the time of the dissolution of the Topeka Company Harrison owned 18 shares of its capital stock; that on October 27, 1900, the plaintiff had commenced the action No. 20,318, and had prosecuted it, to enforce Harrison's double liability upon the ground that the Topeka Company had suspended business; and that that action was dismissed without prejudice to a future suit. The plaintiff also alleged that judgment had been rendered on the debt pleaded against the Topeka Company on May 3, 1900, in No. 18,695, and that an execution had been issued on that judgment and returned unsatisfied. This petition was met by motions, demurrers, an answer, and numerous objections, which will now receive attention.

Counsel for the defendant offered in evidence at the trial a transcript of the record of another action in the district court of Shawnee county, No. 19,902, between the plaintiff and the defendant, brought to enforce the latter's double liability as a stockholder, and based upon an unsatisfied execution on a judgment against the Topeka Company, which was rendered on December 20, 1897, and was afterwards reversed. Thomas v. Remington, 67 Kan. 599, 600, 73 Pac. 909. The trial court refused to receive this transcript, because, among other things, the action it portrayed was not pleaded. The ruling was right. The defendant specifically set forth the grounds of his defense in his answer in eight counts, but nowhere referred to this action, No. 19,902. That action is not, therefore, here for our consideration, and will not be further noticed.

A motion that the plaintiff should be required to specify in its petition the dates and numbers of the certificates of stock which the defendant held, that it should be compelled to elect whether it would proceed upon the promissory notes or upon the judgment, and that the averment of the notes should be stricken from the petition, was denied. The disposition of a motion to make a pleading more definite is ordinarily discretionary with the trial court, and there was no abuse of discretion in this ruling, because the defendant was presumed to have a better knowledge of the stock which he owned than the plaintiff, and the averment by the latter of the amount with which it charged him tendered an issue sufficiently specific.

Counsel insist, however, that the notes had been merged in the judgment against the Topeka Company, that they no longer constituted a cause of action, and that the averment of them should therefore have been stricken from the petition. His position would be sound, if this was an action upon the notes against their maker. Schuler v. Israel, 120 U. S. 506, 509, 7 Sup. Ct. 648, 30 L. Ed. 707. But it is a suit

against a third party, not upon the notes, nor upon the judgment, but upon the defendant's contract, under the Constitution and the statutes of Kansas, that to the amount of the par value of his stock he will pay the debts which the Topeka Company owed when it was dissolved. The notes and the judgment are but different evidences of the existence of that debt. The notes are the best evidence of its existence prior to May 3, 1900, when the judgment upon them was rendered. The judgment is the best evidence of its existence since that date. No rule of law or of practice required the plaintiff to elect one or to abandon either of these evidences. It had the right to plead, to rely upon, and to prove both—the former as the evidence of the existence of the debt when the corporation was dissolved; the latter as the evidence of its continued existence after May 3, 1900. Thomas v. Remington, 67 Kan. 599, 603, 604, 73 Pac. 909.

When the contract which is the foundation of the action was made, there were, as we have seen, two remedies for its enforcement—one in the event of a suspension of business by the corporation for one year, and another by motion or action upon the return of an execution unsatisfied upon a judgment against the corporation. Under the decisions of the Supreme Court of Kansas all actions to invoke any of the remedies were barred by the statute of limitations of Kansas three years after a cause of action to enforce any of them accrued. Cottrell v. Manlove, 58 Kan. 405, 408, 49 Pac. 519; Bank v. King, 60 Kan. 733, 57 Pac. 952; Brigham v. Nathan, 62 Kan. 243, 249, 62 Pac. 319; McHale v. Moore, 66 Kan. 267, 270, 71 Pac. 522; Crissey v. Morrill, 60 C. C. A. 460, 463, 125 Fed. 878, 881; Anglo-American Land, M. & A. Co. v. Lombard (C. C. A.) 132 Fed. 729. There was an exception to this general limitation of three years. It was that if an action was commenced in time, and the plaintiff failed in the action otherwise than upon the merits, and the time limited had expired, he might commence a new action within one year after the failure. Civ. Code Kan. § 23; Gen. St. 1889, § 4100. A voluntary dismissal of an action by a plaintiff without prejudice to a future action was a failure in the action otherwise than upon the merits, within the meaning of this statute. McWhirt v. McKee, 6 Kan. 412, 419. Counsel for the plaintiff contend that this action is upon the same cause as No. 20,318, and that it is not barred, because that action was commenced within three years of the dissolution of the corporation, and this action was commenced within eight days after that action was dismissed without prejudice to a future action. Action No. 20,318 counts upon a suspension and dissolution of the corporation. Counsel for the defendant insist that the petition in this action either states two causes of action, one upon the suspension of the corporation, and another upon the unsatisfied execution against it, so that the plaintiff should have been required to elect, or that it is based upon the execution only and is therefore barred by the statute.

The action, as we have seen, is founded upon the contract. But the defendant made two contracts—one under sections 1200 and 1204 to pay the debts of the corporation in the event of its dissolution, and another under section 1192 to pay them in the case of an unsatisfied

execution upon a judgment against it. The suspension of business by the corporation on November 18, 1895, which is pleaded in the petition in this action, raised a cause of action upon the first contract on November 18, 1896, and barred all causes of action under both contracts and all remedies on November 18, 1899, unless one of them was saved by a previous suit which failed otherwise than upon the merits within one year prior to the commencement of this action. The preservation of a cause of action to enforce one of these contracts did not save a cause of action to enforce any others. The petition states facts sufficient to constitute a cause of action upon the first contract under sections 1200 and 1204. It pleads the suspension of the business of the corporation on November 18, 1895, the indebtedness of the Topeka Company to the Remington Company, the ownership of stock by the defendant at that time, the commencement on October 27, 1899, of action No. 20,318 to enforce this contract under these sections, and the dismissal of that action without prejudice on March 25, 1902, seven days before this suit was commenced. On the other hand, it fails to state facts sufficient to constitute a cause of action to enforce the second contract under the remedy provided by section 1192, because, while it avers that judgment was rendered against the Topeka Company, and that an execution was returned thereon unsatisfied, it contains no allegation that any motion, action, or proceeding was prosecuted under section 1192, which failed otherwise than upon the merits within one year previous to the commencement of this action. It stated a cause of action conditioned by the exigency of the dissolution of the corporation, and no cause of action conditioned by the exigency of an execution returned unsatisfied; but it disclosed the fact that the latter cause was barred by the statute of limitations, and also that, by the commencement of action No. 20,318, the plaintiff had elected the former and estopped itself from prosecuting the latter cause. Remington Paper Co. v. Hudson, 64 Kan. 43, 46, 67 Pac. 636; McGlinchy v. Bowles (Kan.) 75 Pac. 123. The petition in this case therefore stated a cause of action upon the contract and remedy under sections 1200 and 1204, and no other cause of action, and no election was possible.

Another argument for the defendant in this case is that this action is barred, because No. 20,318, which originally counted upon the suspension of the business of the corporation, was changed to an action upon a judgment and an unsatisfied execution under section 1192, because on August 6, 1902, a supplemental petition was filed in it which pleaded the judgment against the corporation. But an averment that an execution had been issued upon the judgment against the corporation and had been returned unsatisfied was indispensable to a cause of action under section 1192, and the supplemental petition contained no such allegation. It therefore presented no new or different cause of action, and suit No. 20,318 continued to the end an action upon the exigency of a dissolution of the corporation under sections 1200 and 1204. Thomas v. Remington Paper Co., 67 Kan. 603, 604, 73 Pac. 909.

Nor is the position of counsel for the defendant tenable that the cause of action presented in this case is not the same as that set

forth in action No. 20,318, because in that action the Remington Company averred that the defendant was the owner of 11, and in this that he was the owner of 18, shares of stock. Ownership of stock is indeed one of the facts essential to the cause of action, but the number of shares owned is not material. The ownership by one person of different shares does not create different causes of action against him, but the number of shares he owns simply measures the extent of his liability. The contract to pay the debts of the corporation is the foundation of the action, and, as that contract is single, the cause of action upon it is one and indivisible. An action upon that contract and the enforcement of the liability appurtenant to it upon a single share of stock would necessarily bar a subsequent action between the same parties to enforce a liability upon any other shares, under the familiar rule that one may not split his cause of action. Brown v. First National Bank, 66 C. C. A. 293, 132 Fed. 450; Watkins v. American National Bank, 134 Fed. 36, 67 C. C. A. 110.

Moreover, if the cause of action were divisible, the action to enforce the liability upon 11 of the shares is the same as that presented in No. 20,318, and, as the judgment in this case is limited to $5,500, the liability upon these 11 shares, and no offset or counterclaim was legally allowable in this action (Anglo-American Land, M. & A. Co. v. Lombard [C. C. A.] 132 Fed. 721, 731), no prejudicial error resulted from the pleading of the additional 7 shares, even if the liability upon them constituted different causes of action which were barred by the statute of limitations, as counsel for the defendant insists, and error without prejudice is no ground for reversal.

It is said that, although the pendency of action No. 20,318 until within seven days of the commencement of this suit might have saved the cause of action here presented from the bar of the statute of limitations if the new action had been brought in the state court, it had no such effect here, because the federal court was without jurisdiction of it and the statute of the state was powerless to confer jurisdiction. Another objection of a somewhat similar character is that the failure of the Remington Company to remove No. 20,318 to the federal court estopped it from maintaining an action for the same cause in the latter court after the former was dismissed without prejudice to a future action. Counsel cite in support of the latter objection Hyatt v. Challiss (C. C.) 55 Fed. 267, a case in which the statute of the state permitted a second trial of the same action for the recovery of real property, and after a judgment for the defendant and the allowance of a second trial under this statute the plaintiff dismissed his action and brought another for the same cause in the federal court. That court rightly dismissed the second action, because the statute granted a second trial of the same action and not a new action. A dismissal of that action was therefore a surrender of the right to the second trial, and a termination of the litigation both in the federal court and in the state court. Deming v. Douglass, 60 Kan. 741, 57 Pac. 954. These decisions have no application to this case, because the Legislature of Kansas provided that the plaintiff should have, not another trial of the same action, but a new action for the same cause when the first action,

commenced in due time, failed otherwise than upon the merits. Gen. St. 1889, § 4100. As the second action is a new action, the failure to commence the first in or to remove it to the federal court in no way estops a party from maintaining the second action for the same cause in that court.

Counsel cite and review in their brief decisions of many courts, other than the Supreme Court of Kansas, in support of the proposition that a voluntary dismissal of an action without prejudice is not a failure otherwise than upon the merits, within the meaning of the statute of Kansas. But these decisions may not avail because the Supreme Court of that state has decided that it is such a failure. McWhirt v. McKee, 6 Kan. 412, 419. There is no question of general or commercial law or of right under the Constitution of the United States involved in this issue, and the construction of its statutes by the highest judicial tribunal of a state controls in the federal courts in such a case. Madden v. Lancaster County, 12 C. C. A. 566, 570, 65 Fed. 188, 192; Clapp v. Otoe County, 45 C. C. A. 579, 582, 104 Fed. 473, 476; City of Beatrice v. Edminson, 54 C. C. A. 601, 604, 117 Fed. 427, 430; Independent School District v. Rew, 49 C. C. A. 198, 207, 111 Fed. 1, 10, 55 L. R. A. 364.

Nor is the argument that the federal court had no jurisdiction of this action and that the state court was incapable of conferring any persuasive. The Constitution of the United States, the acts of Congress, the diversity of citizenship, and the amount involved vested jurisdiction of this controversy in the court below from its inception. That court has always had and it still has this jurisdiction. The truth is that no question of jurisdiction is involved in the construction or application of section 23 of the Code of Kansas, or of any of the other provisions of its statutes of limitations. In the exercise of their jurisdiction over causes of action at law, the federal courts regard and enforce the statutes of limitations of the states; but their jurisdiction of the causes presented to them is not less plenary, when those statutes rightfully invoke decisions from them to the effect that the causes pleaded are barred, than when they are compelled to announce a different conclusion. The question here involves nothing but the construction of the statutes of limitation of Kansas. The general statute of that state barred the cause of action here in question in three years from its accrual, or on November 18, 1899. In the absence of that statute the cause of action would have been available indefinitely in both the federal and the state courts. That statute, standing alone, would have barred it in three years from its accrual. Section 23 interposed a saving clause, an exception to that general rule, so that in legal effect the statutes provided that this cause of action should be barred in three years, except in case an action was brought upon it in due time which failed otherwise than upon the merits, and that then a new action might be maintained upon it within a year after the failure. Deming v. Douglass, 60 Kan. 738, 740, 57 Pac. 954; Karnes v. Ins. Co., 144 Mo. 413, 419, 46 S. W. 166. Both by the general terms of the statute and upon familiar principles the exception to the general statute and the new action were alike available in the federal court. Whenever the

citizens of a state may secure a trial and decision of their controversies in its courts by original suits or like proceedings, citizens of different states have the right to the determination by the courts of the United States of like controversies between them which involve the requisite amounts. Rights created and remedies provided by the statutes of the states to be pursued in the state courts may be enforced and administered in the national courts, either at law, in equity, or in admiralty, as the nature of the rights and remedies may require. "A party by going into a national court does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality." Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447; Darragh v. H. Wetter Mfg. Co., 78 Fed. 7, 14, 23 C. C. A. 609, 616; National Surety Co. v. State Bank, 56 C. C. A. 656, 667, 120 Fed. 593, 604; Sawyer v. White, 122 Fed. 223, 227, 58 C. C. A. 587, 591; Barber Asphalt Pav. Co. v. Morris, 132 Fed. 945, 949, 66 C. C. A. 55, 59, 67 L. R. A. 761.

The defendant pleaded and offered to prove that during the trial of No. 20,318 the state court announced that it would instruct the jury that the denial of the motion to issue the execution against the defendant in No. 18,695 was a bar to that action, and that the plaintiff could not recover therein. Counsel insist that this ruling rendered that issue res adjudicata in this case and that it was fatal to its maintenance; but the court never embodied the ruling, or rather the proposed instruction, in any final decision or judgment, but subsequently dismissed the action in which it made the announcement without prejudice to another for the same cause. Rulings and decisions in the course of an action which is finally dismissed wthout prejudice adjudge nothing, because the final judgment by its terms is that nothing has been adjudicated, and this fact is the only res adjudicata. Such a judgment determines that the parties are left as free to litigate every issue in the action dismissed as they would have been if it had never been commenced. Northern Pac. Ry. Co. v. St. Paul, M. & M. R. Co. (C. C.) 47 Fed. 535, 537; Gunn v. Peakes, 36 Minn. 177, 180, 30 N. W. 466, 1 Am. St. Rep. 661; Reynolds v. Hennessy (R. I.) 23 Atl. 639; Epstein v. Ferst (Fla.) 17 South. 414, 415.

It is repeatedly and persistently argued that the court below erred because it refused to hold that the denial of the motion for the execution against the defendant in No. 18,695 was not a conclusive estoppel of the plaintiff from prosecuting this action. The plea of that refusal was stricken from the answer upon motion, and the transcript of the record of the proceedings in that case was not received in evidence. But a careful examination of the transcript has convinced that there was no prejudicial error in these rulings, because, if they had been otherwise, the judgment in that proceeding was not of a character to estop the plaintiff from the trial of the issues presented in this action. It is conceded that the proceeding by motion was a civil action between the plaintiff and the defendant, and that the denial of the motion had the conclusive effect of a judgment in such an action. Crissey v. Morrill, 125 Fed. 879, 885, 60 C. C. A. 460, 466. It was an action between the same parties, but it was not an action upon the same cause of action

as that in the suit in hand. It was an action to enforce the contract of the defendant under section 1192 on the ground of an unsatisfied execution upon a judgment against the corporation. This is an action to enforce the defendant's contract under sections 1200 and 1204 on the ground that the corporation ceased business for more than a year. The test of the identity of causes of action is the identity of the facts essential to maintain them. The facts indispensable to sustain the former cause of action were (1) that the plaintiff was a creditor and the defendant a stockholder of the corporation on May 3, 1900, when the judgment was rendered, and (2) that a judgment had been entered against the corporation upon the debt to the plaintiff and that an execution thereon had been returned unsatisfied. The facts requisite to sustain the latter cause were (1) that the plaintiff was a creditor and the defendant a stockholder of the corporation on November 18, 1896, when it became dissolved, and (2) that it had ceased business for more than a year before the action was commenced. The time when the rights of the parties were fixed differed in the two causes, a judgment and an unsatisfied execution were indispensable to the former and immaterial to the latter, and the cessation of business of the corporation was essential to the latter and immaterial to the former. The causes differ so widely that the commencement of an action upon one is a bar to the maintenance of an action upon the other in the courts of Kansas, and, since in No. 20,318 an action had been commenced upon the cause here in suit before the motion for the execution was made in No. 18,695, the prosecution of that motion was barred under the rule established by the highest judicial tribunal of that state. Remington Paper Co. v. Hudson, 64 Kan. 43, 46, 67 Pac. 636; McGlinchy v. Bowles, 75 Pac. 123; Hudson v. Remington Paper Co., 80 Pac. 568, 570.

The rules of estoppel applicable to this situation are: When the second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question which was or might have been presented and determined in the former. When the second suit is upon a different cause of action, but between the same parties as the first, the judgment in the former action operates as an estoppel in the latter as to every point and question which was actually litigated and determined in the first action, but it is not conclusive relative to other matters which might have been, but were not, litigated or decided. Linton v. Ins. Co., 104 Fed. 584, 587, 44 C. C. A. 54, 57; Commissioners v. Platt, 79 Fed. 567, 571, 25 C. C. A. 87, 91; Board v. Sutliff, 38 C. C. A. 167, 171, 97 Fed. 270, 274; Southern Pac. Co. v. U. S., 168 U. S. 1, 48, 18 Sup. Ct. 18, 42 L. Ed. 355; Southern Minn. Ry. Extension Co. v. St. Paul & S. C. R. Co., 55 Fed. 690, 5 C. C. A. 249. Where the record is such that there is or may be a material issue, question, or matter in the second suit upon a different cause of action, which may not have been raised, litigated, and decided in the former action, the judgment therein does not constitute an estoppel from litigating this issue, question, or matter, unless by pleading or proof the party asserting the estoppel establishes the fact that the issue, question, or matter in dispute was

actually and necessarily litigated and determined in the former action. Russell v. Place, 94 U. S. 606, 608, 24 L. Ed. 214; Ætna Life Ins. Co. v. Board of Commissioners, 54 C. C. A. 468, 474, 117 Fed. 82, 88; Cromwell v. County of Sac, 94 U. S. 351, 359, 24 L. Ed. 195; Nesbit v. Independent District, 144 U. S. 610, 619, 12 Sup. Ct. 746, 36 L. Ed. 562; Railway Co. v. Leathe, 84 Fed. 103, 105, 28 C. C. A. 279, 281.

The defendant interposed by his answer, and the court found, facts which constituted two defenses to the action upon the motion which are not available in defense of this action—the fact that the plaintiff had commenced action No. 20,318 on October 27, 1899, upon the ground that the corporation had ceased business, and the fact that the corporation was indebted to the defendant in the sum of $5,535.85. The former fact was a bar to the proceeding upon the motion under the decisions of the courts of Kansas, which have been cited above; but it was not only not a bar, but a fact indispensable to the maintenance of this action. The latter fact was a good defense to the liability on 11 shares of stock in the state court in the action upon the execution where equitable defenses may be interposed in actions at law. Pierce v. Security Co., 60 Kan. 164, 55 Pac. 853; Van Pelt v. Strickland, 60 Kan. 584, 57 Pac. 498; Abbey v. Long, 44 Kan. 688, 24 Pac. 1111; Musgrave v. Glen Elder Association, 5 Kan. App. 393, 49 Pac. 338; Campbell v. Reese, 8 Kan. App. 518, 56 Pac. 543. But it constitutes no defense in this action, because the indebtedness of the corporation to a stockholder defendant is only available by a suit in equity in the federal court, and this is an action at law. Anglo-American Land, M. & A. Co. v. Lombard (C. C. A.) 132 Fed. 721, 731, and cases there cited.

For this reason the argument of counsel for the defendant in another part of their brief that the transcript in No. 18,695 should have been admitted in evidence to establish the adjudication of the indebtedness of the corporation to the defendant is not tenable. The existence of that indebtedness was not a material issue in this action. In the action based upon the motion the court found that the defendant was the owner of 15 shares of stock, so that the indebtedness of $5,535.85 was insufficient to offset his entire liability. It was not a complete defense, but a defense pro tanto. But the findings of the court in that case and the denial of the motion for the execution disclose facts found adequate to sustain one defense to that action, which is not available in this, and there is nothing in the record to show whether the judgment in that case was based upon the issue presented by that defense or upon some other issue. Since that judgment may have been founded upon an adjudication of an issue in that action which is not presented in this, and the fact is not established that any issue, question, or matter essential to the maintenance of this action was necessarily or actually litigated and decided in the former, the judgment in that action did not render any of the issues in this action res adjudicata, and there was no prejudicial error in the rejection by the trial court of the plea and proof of the proceedings upon the motion.

Complaint is made that the copy of the articles of incorporation written in the record book of the company was received in evidence to prove the par value of its stock, and that the receipts for certificates

140 F.—26

of shares of stock signed by the defendant on the stubs of the certificates, and corresponding assignments of the stock thus receipted for to him written in the certificate book of the corporation, were received in evidence over the objections of his counsel. The records of a private corporation are not competent evidence against third persons to establish their relation of stockholders to the corporation, or to prove other contracts between them and the corporation, in the absence of proof of their knowledge and assent to them. Carey v. Williams, 79 Fed. 906, 25 C. C. A. 227; Foote v. Anderson, 123 Fed. 659, 662, 61 C. C. A. 5; Sigua Iron Co. v. Greene, 88 Fed. 207, 212, 31 C. C. A. 477, 482; Rudd v. Robinson, 126 N. Y. 113, 26 N. E. 1046, 12 L. R. A. 473, 22 Am. St. Rep. 816; Thomp. Corp. § 1924. But admissions of a party against his interest, inscribed upon the record books of a corporation, are as competent and persuasive evidence against him as though they were written elsewhere. Before the copy of the articles of incorporation in the record book was introduced in evidence, a subscription for stock in the corporation, inscribed upon that book and signed by the defendant, had been received without objection, and a witness had testified that one of the signatures appended to the copy of the articles of incorporation written in the book was the genuine signature of the defendant. This testimony made the copy an admission of the defendant that it truthfully stated the terms of his association with those who formed the corporation and the par value of its stock.

Before the receipts written upon the stubs of the certificates of stock were received in evidence testimony had been introduced that they bore the genuine signatures of the defendant, and an examination of the assignments of stock in the certificate book to which objection is interposed discloses the fact that they exactly correspond in number of certificates, amounts of shares, and dates with these receipts. The receipts were competent admissions of the defendant against his interest, and were rightly received in evidence upon that ground. If the assignments were incompetent and erroneously received, they had no tendency to prove anything which is not established by the receipts; and it is clear beyond all doubt that their reception in evidence did not prejudice, and could not have injured, the rights of the defendant. The statutes of Kansas provided that the stock should be transferable only on the books of the corporation as its by-laws should prescribe. Gen. St. 1899, § 1244. The by-laws provided that the stock should be transferred on the books of the company by the owner in person or by his legal representative, and that before a new certificate should be issued the transferred certificate should be returned and canceled. The receipts of the defendant on the stubs of his certificates admitted that these things had been done. They specified the numbers of his certificates, the numbers of his shares, from whom they were transferred, and there was no contradiction of the evidence they furnished during the trial of the action.

There were less important objections to the proceedings in this case in the court below. But a patient examination of all the suggestions of the defendant has convinced us that the trial court committed no material error in its conduct of the action, and that the judgment below must be affirmed. It is accordingly so ordered.