WILLIAM R. WHITE, as Superintendent of Banks of the State of New York, Respondent, v. PEARL ADLER and Others, Defendants, Impleaded with HENRY D. GASNER and BESSIE GASNER, Appellants.

First Department, December 23, 1938.

*Joseph Katz* of counsel [*Henry D. Levy,* attorney], for the appellants.

*Harold N. Cohen* of counsel [*Carl J. Austrian,* attorney], for the respondent.

CALLAHAN, J. This is an action by the Superintendent of Banks to recover assessments levied against stockholders of the Bank of United States which was placed in liquidation on December 11, 1930. The complaint herein alleges in paragraph " 123 " thereof: " Each of the defendants appearing upon Schedule ' B ' annexed hereto and made part hereof, was on and prior to December 11, 1930, and thereafter, the owner and holder and on and prior to December 11, 1930, and thereafter appeared upon the stock ledger of said Bank as such owner and holder of the number of shares of its capital stock set opposite his or its respective name upon said schedule under the caption ' No. of Shares.' " Schedule " B," annexed to the present complaint, shows 2 shares of stock in the name of Bessie Gasner and 325 shares in the name of Henry D. Gasner. Judgment has been entered herein against said defendants as owners of said shares.

Prior to the institution of this action another suit was brought against these defendants by the Superintendent, in which judgments were entered against defendant Bessie Gasner, as the owner of eight shares of stock, and the defendant Henry D. Gasner, as the owner of one share of stock. The prior judgments were paid.

In the prior action (following the allegations of the complaint therein) a specific finding was made that " On and prior to December 11, 1930, defendant Henry D. Gasner appeared and now appears upon the stock ledger of the Bank of United States as the owner and holder of one share of its capital stock;" and " On and prior to December 11, 1930, the defendant Bessie Gasner appeared and now appears upon the stock ledger of the Bank of United States as the owner and holder of eight shares of its capital stock." Findings were also made in that action that the present defendants were the owners and holders of record of said shares.

One of the questions presented on this appeal is whether the judgments in the first action bar the present suit under the rule against splitting of causes of action.

The evidence discloses that prior to December 10, 1930, defendant Henry D. Gasner was the owner of record of 326 shares of the bank's stock and the defendant Bessie Gasner was the owner of record of two certificates of stock, one for two shares and the other for eight shares. On or shortly prior to December 10, 1930, the defendant Henry D. Gasner sold 325 of the total of 326 shares to one Lois S. Johnston and defendant Bessie Gasner sold eight of her shares to the same person. Johnston was the nominee of a securities company affiliated with the Bank of United States.

The testimony further discloses that on December 10, 1930, certificates representing the 325 and 8 shares so sold were presented to the stock transfer office of the Bank of United States for transfer. On that date these certificates were accepted for transfer by the bank and said certificates stamped " cancelled." New certificates were prepared and signed by officers of the bank and entries were made in a book or record, known as the " Stock Transfer Sheets," of the impending transfers. All of these steps were taken prior to the closing of the bank. Certain other steps remained to complete the transfers. These had not been taken when the bank closed. The unexecuted steps were that the canceled and the new certificates were required to be sent to the registrar, the Chase National Bank, for registration, and the certificates were to be returned to the Bank of United States, where final entries regarding the transfers would be posted in the stock book or ledger of the bank.

It appears from the evidence and the trial court found that after the closing of the bank and between December 13 and December 15, 1930, the Superintendent, on advice of counsel, took the necessary steps to complete the transfer of the shares sold. Accordingly, at that time the new stock was registered in the name of Johnston and entries were made on the stock ledger of the bank showing the new ownership. However, these entries were made in the ledger under the date of December tenth, rather than of the actual date when the transfers were completed. Thereafter it appeared on the face of the stock ledger that the 325 shares upon which this action was based against Henry D. Gasner had been transferred from his name to that of Johnston on December 10, 1930, and that the two shares on which this action is based against defendant Bessie Gasner had been likewise transferred.

Lois S. Johnston was named in the prior action as a defendant and as owner of the shares upon which the present suit is brought against the Gasners. However, no service of the summons and complaint was made on her in that action.

Section 113-a▊ of the Banking Law, which defines the liability of stockholders, refers to several classes thereof, among them the following:

(1) Such persons as appear by the books of the bank or trust company to be stockholders; and

(2) Every owner of stock, legal or equitable, although the same may be on such books in the name of another person.

If proof had been introduced in the first trial to show that the entries made between December 13 and 15, 1930, had been placed in the stock ledger after the closing of the bank it would have appeared that Henry D. Gasner was the owner of 326 shares and Bessie Gasner the owner of ten shares at the time the bank suspended. On the other hand, the stock transfer sheets as they existed on December 10, 1930, would have shown that at the time of the closing of the bank entries had been made therein of the cancellation of Gasners' stock to the extent of 325 and 8 shares and the impending issuance of new shares for the canceled shares. Apparently, however, the prior suit was tried as if the transfers of the 325 and 8 shares had been completed before the bank closed. The stock ledger was taken to show the facts as to ownership disclosed by the entries made after the closing rather than the true condition at the time of closing. Whether this was due to oversight or because of a mistaken view of the law is not clear. It appears, however, that the prior suit was brought before the decision rendered by the Court of Appeals in *Broderick* v. *Aaron* (*Kessler*) (268 N. Y. 411). In that case the Court of Appeals said (at p. 416): " A stockholder of record has not ' caused his stock to be transferred on the books of the bank ' until he has requested transfer of the stock, and at least a reasonable time has elapsed to enable the bank in accordance with established and reasonable routine to act upon the request. If default in payment of the bank's liabilities intervenes, the stockholder's personal liability remains intact. A different result might perhaps follow if failure to make the transfer had been due to wrong or neglect by the bank or its agents. [Cf. *Broderick* v. *Adamson*, 148 Misc. 353; affd., 243 App. Div. 692.]

Though the facts in the *Kessler* case (*supra*) were substantially different from those in the present case, the Superintendent took the position after that decision that he now asserts, viz., that because the Gasners had not presented their stocks for transfer a sufficient time before the closing of the bank to permit the transfers to be completed in the regular course of business, they were

liable as stockholders of record for the shares sold to Johnston. In the *Kessler* case (*supra*) the certificates involved had been presented at a branch office of the bank, but, unlike the present case, they had not been received at the main office for transfer, nor had any entries been made concerning the change of ownership prior to the closing.

We need not determine, however, whether the rule in the *Kessler* case (*supra*) controls here, or whether these defendants " appeared by the books of the company " to be the owners of the stock at the time of the closing. For the purpose of this decision we will assume that the condition of the stock book or ledger controlled on the question of record ownership, and not the stock transfer sheets. This assumption finds support in that section 10 of the Stock Corporation Law requires corporations to keep a stock book in which ownership of stock will be entered.

Despite the assumption made, we hold that the plaintiff may not recover in this action, because to do so would permit him to split a single and indivisible cause of action. The liability of stockholders is based upon contract. (*Lowry* v. *Inman*, 46 N. Y. 119.) Whether the assessments against stockholders by the Superintendent of Banks were based on single and entire, or several and distinct contracts is important to the present inquiry. We deem the liability single and entire and that it arises as to each stockholder when the Superintendent finds an assessment proper, as to all shares on which the liability rests on the same ,basis. Counsel for the Superintendent does not contend that separate actions could be maintained merely because different portions of the 326 shares acquired by defendant Henry D. Gasner were recorded upon the books of the bank at different times. It is his position that grounds of liability in the first action and the present one are different, and that different evidence was necessary to establish the present cause of action from that relied on in the first suit. We are unable to agree with his contentions under the present circumstances.

It appears to us that the liability of these defendants, both in the prior and in the present action, was based upon assessments imposed on the defendants as stockholders who " appear by the books of the bank * * * to be stockholders " under subdivision 1 of section 113-a of the Banking Law. The Superintendent contends that the defendants were liable in the first suit under the foregoing subdivision, but that in the present action liability arises under that portion ·of section 113-a of the Banking Law which provides: " No person who has in good faith, and without any intent to evade his liability as a stockholder, caused

his stock to be transferred on the books of the bank or trust company when such bank or trust company is solvent to any resident of this State of full age previous to any default in the payment of any debt or liability of the bank or trust company, shall be subject to any personal liability for any contracts, debts or engagements of the bank or trust company." He contends that, although the defendants herein sold the stock involved in the present suit, they are liable because they failed to cause the transfer to be made in such time that it could be entered on the stock ledger. The clause last quoted, however, merely grants immunity to one who has sold his stock and caused it to be transferred on the books, and provides under what conditions and to whom such transfer is to be made. There is no dispute in this case concerning the good faith of a transfer actually made and recorded on the books, nor is liability sought to be imposed because of a breach of the immunity clause. The essential claim in both cases was that the Gasners remained as stockholders on the books of the bank. In both suits the liability rests on record ownership. The only difference between the allegations in the first complaint and those in the present pleading is that in the first suit it was alleged that the Gasners, according to the books of the bank, " appeared and *now* appear " to be the owners of certain stock, whereas in the present complaint it is alleged that they " appeared on December 11, 1930, and *thereafter* " to be such owners.

We see no material difference in these allegations in so far as they affect the right to recover in either case. That in the first action ownership of the stock involved continued in the Gasners down to the time of the first trial was wholly immaterial. Likewise in the present suit that there had been a sale of the stock on or about December 10, 1930, is immaterial. The change of ownership did not affect liability as asserted herein, because it was not followed by timely change in the controlling records of the bank. The changes made in the stock book on or about December 13, 1930, in nowise affected liability, but merely altered the nature of the proof to be introduced to explain the condition of the books on the date of closing. No person who becomes a stockholder of record after the closing of the bank thereby becomes liable for an assessment. (*Broderick* v. *Aaron* [*Kornberg*], 268 N. Y. 260.) The only date that was material in either of these cases, in so far as the appearance of the books created liability, was December 11, 1930.

In the prior action proof might have been offered of the true condition of the stock book as it existed on December 11, 1930. The omission of such proof did not make the cause of action different from the present one.

In *Perry* v. *Dickerson* (85 N. Y. 345, at p. 347) the Court of Appeals said: "In order to establish an identity between the causes of action in the two suits, it is not necessary that the claim made in the first action, embraced the same items sought to be recovered in the second. It is sufficient to bring the second action within the estoppel of the former judgment, that the cause of action in the former suit was the same, and that the damages or right claimed in the second suit, were items or parts of the same single cause of action, upon which the first action was founded. The law, to prevent vexatious or oppressive litigation, forbids the splitting up of one single or entire cause of action into parts, and the bringing of separate actions for each; and neither in this way nor by withholding proof of particular items on the trial, or by formally withdrawing them from the consideration of the jury, can the effect of the judgment, as a complete adjudication of the entire cause of action, be prevented. There can be but one recovery for an injury from a single wrong, however numerous the items of damage may be, and but one action for a single breach of a contract." (Citing cases.)

Applying these rules to the present situation, it appears that, although the stock was acquired at different times, it was all owned and on the books of the bank in the name of defendants at the time that a single breach occurred. By withholding proof of the alterations in the stock book, the effect of the prior judgment as a complete adjudication could not be prevented.

A situation quite similar to the present existed in *Harrison* v. *Remington Paper Co.* (140 Fed. 385, decided by SANBORN and VAN DEVANTER, C. JJ., and ADAMS, D. J.; certiorari denied, 199 U. S. 607). The Circuit Court of Appeals (Eighth Circuit) there held (p. 397), concerning the liability for a stock assessment: "The ownership by one person of different shares does not create different causes of action against him, but the number of shares he owns simply measures the extent of his liability. The contract to pay the debts of the corporation is the foundation of the action, and, as that contract is single, the cause of action upon it is one and indivisible. An action upon that contract and the enforcement of the liability appurtenant to it upon a single share of stock would necessarily bar a subsequent action between the same parties to enforce a liability upon any other shares, under the familiar rule that one may not split his cause of action." (Citing cases.)

It is our view that the prior judgment bars recovery in the present action.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., GLENNON and DORE, JJ., concur.

Judgment unanimously reversed, with costs, and the complaint dismissed, with costs. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.