## UNITED STATES v. SOMMERS.

(Circuit Court of Appeals, Eighth Circuit. May 28, 1909.)

No. 2,918 (1,957).

1. JUDGMENT (§§ 585, 720*)—RES ADJUDICATA.

Where a court has jurisdiction of the subject-matter and the parties, its judgment is a bar to any subsequent suit upon the same cause of action, and is also, in any suit upon a different cause of action between the same parties, an estoppel as to any matter actually litigated.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1092, 1251; Dec. Dig. §§ 585, 720.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. JUDGMENT (§§ 956, 957*)—PRESUMPTION OF JURISDICTION OF SUBJECT-MATTER.

A District Court being a tribunal of general jurisdiction, it is to be presumed that all matters covered by its judgment were in fact litigated by the parties; and, where such judgment is collaterally attacked, it will not only not be held void in the absence of proof of the evidence and pleadings on which it was based, but it may be doubted whether evidence, however strong, would be received to impeach it on the ground that it did not have jurisdiction of the subject-matter.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1822, 1826; Dec. Dig. §§ 956, 957.*]

3. JUDGMENT (§ 495*)—COLLATERAL ATTACK—CUSTOMS FORFEITURE—RES ADJUDICATA.

A District Court decreed in proceedings for the forfeiture of imported goods that no additional duty for undervaluation should be assessed. *Held,* in the absence of evidence to the contrary, that the court would be presumed to have had jurisdiction over this question, and that therefore the question was res adjudicata and could not be raised in collateral proceedings.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 933; Dec. Dig. § 495.*]

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

· The decision below reversed a decision by the Board of United States General Appraisers (G. A. 6,536; T. D. 27,887).

This is a revenue case which came before the trial court on appeal from the Board of General Appraisers. Appellee's mother-in-law, while traveling in Europe, purchased for him a number of pictures, and shipped them to this country without an invoice. Upon their arrival at St. Louis, he applied through the customs brokerage firm of C. H. Wyman & Co. for their entry. Mr. Thompson of that firm stated in a sworn affidavit which he presented to the customs officer that he knew nothing about the value of the pictures, and asked for an appraisement. The officer submitted the matter to proper appraisers, who made a report fixing the value at $205. Thereupon the collector demanded that formal entry be made and filed, wherein the actual cost or the foreign market value of the pictures should be stated. Mr. Thompson protested against this, stating that he had no knowledge himself of the value, nor any present means of obtaining such knowledge; but the collector refused to permit the entry unless such a paper was prepared and filed. Thereupon Thompson executed an affidavit wherein the actual cost or foreign market value of the merchandise was stated at the price fixed by the appraisers, $205, and the duty was liquidated upon that basis, and the pictures delivered. At the same time a bond was given conditioned for the furnishing of a consular invoice. In due time the invoice arrived, and by it the value of the paintings was fixed at $750. Mr. Sommers, through his brokers, presented this invoice to the collector, and, upon the information thus supplied, the pictures were seized and proceedings instituted for their condemnation and sale upon the ground that they had been fraudulently entered. This cause was tried before the court without a jury, resulting in a judgment in favor of defendant on April 16, 1906. Thereafter, and on June 28, 1906, the entry was reliquidated by the customs authorities, and, in addition to the duty imposed by law upon the pictures at the valuation of $750, a further duty of 50 per cent. was assessed under Act June 10, 1890, c. 407, § 7, 26 Stat. 134, as amended by Act July 24, 1897, c. 11, § 32, 30 Stat. 211 (U. S. Comp. St. 1901, p. 1893). Upon receiving notice of this action, appellee here, as defendant in the forfeiture case, entered a motion therein in the District Court for modification of the judgment. The parties were fully heard on this motion, and the judgment was set aside and a new judgment entered, which provided that the paintings be "surrendered into the possession of said claim-

ant upon payment of the duty due and payable on the true value of the paintings, as shown by the consular invoice, but without the additional duty of 50 per cent. in the nature of a penalty provided for under certain circumstances, and which the court holds should not be applied in this case." Mr. Sommers, in order to get possession of the paintings, paid, before the entry of this judgment, the additional exaction under written protest, and prosecuted this proceeding before the revenue authorities to obtain a return of the money, relying, among other things, upon the amended judgment. The revenue officers all sustained the legality of the additional 50 per cent. duty, and the appellee brought the decision of the Board of General Appraisers before the trial court by appeal. That court reversed the decision of the board, and entered judgment in favor of Sommers for the amount of the additional 50 per cent. duty, and to review that judgment the present appeal is brought.

The opinion filed by the Circuit Court reads as follows:

"TRIEBER, District Judge. The first liquidation was clearly tentative and not final. The true value of the picture imported was unknown to the importer, and was not definitely determined by the appraiser. This is conclusively shown by requiring the importer to execute a bond as set out in the petition. When the consular invoice was produced by the importer, it appeared that the first valuation made by the appraiser, which was $205, was too low, the cost thereof being $749.10. After this fact was ascertained the picture was seized by the collector, and an information for forfeiture under Customs Administrative Act June 10, 1890, c. 407, § 7, 26 Stat. 134 (U. S. Comp. St. 1901, p. 1893), was filed. Upon the hearing of that cause it was held by the court that there was no cause for the forfeiture, and the pictures directed to be delivered to the plaintiff without the 50 per cent. penalty. Thereupon, on June 29, 1906, more than one year after the first appraisement had been made, a new liquidation was made by the collector in conformity with the consular invoice and a penalty of 50 per cent. interposed on the increased valuation. Upon these facts I am of the opinion that the collector had the power to make the second liquidation, the first having been merely conditional and for the purpose of enabling the importer to obtain the picture. Whatever mistake there was in the first appraisement was an innocent one of fact, not only upon the part of the importer, but also of the appraisers. There can be no doubt but that nothing was done by the importer or his agent which would warrant a finding that it was intended to perpetrate a fraud on the government. On the contrary, the evidence shows that there was a frank and true statement of the facts made by the importer.

"For these reasons, the last liquidation is in fact the only one, and, being so, the importer cannot plead the one-year statute of limitations, nor is the government entitled to any penalty on the increased valuation. The judgment of the court is that the government is entitled to duties on the picture at a valuation of $749.10, but no penalties. Judgment will be entered accordingly."

Truman P. Young, Asst. U. S. Atty. (Henry W. Blodgett, U. S. Atty., on the brief).

Joseph H. Zumbalen (Ferriss, Zumbalen & Ferriss, on the brief), for importer.

Before ADAMS, Circuit Judge, and RINER and AMIDON, District Judges.

AMIDON, District Judge (after stating the facts as above). Could the judgment from which we have quoted above be collaterally attacked? It was presented to the Board of General Appraisers, and they disposed of it in the following language:

"So much as was said by the learned judge in reference to the amount of duties payable on the merchandise must be construed as obiter dictum, and of no binding force."

Judicial opinions may be narrowed by the principle referred to by the learned board, but we are not aware that the judgments and decrees of courts can be pared down by the doctrine of obiter dicta. In dealing with judgments the only question is, had the court jurisdiction of the subject-matter and the parties? If it had, its judgment is a bar to any subsequent suit upon the same cause of action, and is also, in any suit upon a different cause of action, between the same parties, an estoppel as to any matter actually litigated. Cromwell v. County of Sac, 94 U. S. 361, 24 L. Ed. 195; Harrison v. Remington Paper Co., 140 Fed. 385, 400, 72 C. C. A. 405, 3 L. R. A. (N. S.) 954. The cause of action here asserted by the government is that it is entitled to the 50 per cent. additional duty. That claim is denied by the appellee. This is the only controversy presented by the record or discussed by counsel. That matter is unquestionably covered by the judgment in the forfeiture case, both negatively and affirmatively. It was there first adjudged that Mr. Sommers was entitled to a return of his paintings, "upon payment of the duty due and payable on the true value of the paintings, as shown by the consular invoice." Second, it was adjudged that claimant was entitled to a return of the paintings, without the payment of "the additional duty of 50 per cent. in the nature of a penalty provided for under certain circumstances, and which the court holds should not be applied in this case." Unless that judgment is void, it establishes beyond question that the government was not entitled to the 50 per cent. duty, and that the appellee is entitled to a return of the money which was exacted of him without authority of law.

But it is said that the judgment is void because the only issue in the forfeiture case was whether the entry was fraudulent, and the pictures for that reason subject to forfeiture. The difficulty with that contention, however, is that we have neither the pleadings nor the evidence in that case before us. The court being a court of general jurisdiction, we are bound to presume that all matters covered by its judgment were in fact litigated by the parties. In the absence of all showing, we cannot assume that the court undertook to pass upon matters which were not submitted to it for decision. No doubt, if a court by mere brutum fulmen should assume to adjudicate matters wholly outside the actual litigation, its judgment would be void; but such conduct is so foreign to the ordinary proceedings of courts of record that it may be seriously doubted whether evidence, however strong, would be received to impeach a judgment collaterally upon such grounds. Certainly a judgment cannot be so overthrown upon a mere speculative inference as to what the issues might have been. That, however, is all we have before us in the present case. Our attention is directed to the grounds of an ordinary suit for forfeiture, and the frame of the pleadings therein; and we are asked to hold as a matter of law that in the forfeiture suit here involved no other matters could possibly have been litigated by the parties. The premise does not support the conclusion. It is open to litigants to restrict or enlarge their issues within wide discretionary limits. Surely it was competent for the government and the claimant in the forfeiture case to litigate the question not only whether the entry was fraudulent, but also whether the paintings, in

the absence of fraud, were subject to the additional 50 per cent. duty. Even if the evidence showed that there was no fraudulent intent, still the customs officers would have been entitled, and it would have been their duty, to retain possession of the paintings until all sums due thereon were paid to the government. Those officers proceeded upon that basis. They assessed the new duties and the penalty against the paintings, and retained them in their possession for the purpose of enforcing payment of this claim. Under such a situation, we are bound to presume that every matter covered by the judgment was in fact litigated by the parties. Indeed, the course of events, as disclosed by the record, contains persuasive evidence that what we are thus bound to hold as a legal presumption actually took place as a matter of fact. As above stated, the original judgment was rendered on April 16, 1906. The entry was reliquidated by the customs officers, and the additional duties and penalties imposed on June 28, 1906. Thereupon the claimant moved to modify the judgment. Why? Manifestly that it might be extended so as to cover all matters in dispute between him and the government. The second judgment recites that the parties were heard upon this motion, and that it is based "upon the pleadings and proofs adduced." Upon such a showing the original judgment was vacated and set aside, and the new judgment entered. Thus, not only the presumption of law, but the showing disclosed by the record, established that the judgment embodies only such matters as were actually litigated by the parties. Such being the case, the rights of the parties in the present controversy there became res adjudicata, and upon that determination the paintings were not subject to the additional duty of 50 per cent., and the appellee here was entitled to a return of his money.

The decree must be affirmed.

RINER, District Judge (concurring). This is an appeal from a decree of the circuit court for the Eastern District of Missouri denying the right of the government to collect an additional duty of 50 per cent. upon the entry of certain merchandise consigned to David Sommers at St. Louis. The goods consisted of a case of paintings, three in number, imported October 30, 1902, by steamer Moltke from Hamberg, and arrived at the port of St. Louis in November, 1902. C. H. Wyman & Co., as agent for Sommers, made an entry of the merchandise November 17, 1902. The application for the entry was made by Mr. Thompson, a member of the firm of Charles H. Wyman & Co., under oath, to enter the goods without a certified invoice, no invoice having been received, stating in the affidavit that the paintings were imported by Charles H. Wyman & Co., and that the value was unknown to them.

The record shows that the pictures were sent to Sommers by Mrs. Drey, his mother-in-law, who was then in Europe, and that he did not know their value, and, as he had received no communication whatever from her, had no means of ascertaining their value. Upon the filing of the application the deputy collector at the port of St. Louis ordered the goods appraised, and the local appraiser returned their value at $205, and the entry was liquidated December 15, 1902,

the duties being based on the appraised value, $205. The entry made by Charles H. Wyman & Co., as agent for the consignee, was in the form prescribed by sections 4 and 5 of the customs administrative act (Act June 10, 1890, c. 407, 26 Stat. 131, 132 [U. S. Comp. St. 1901, pp. 1888, 1889]). In this entry the value of the pictures was stated to be $205, as found and returned by the local appraiser. The entry was made in this form upon the demand of the collector. Mr. Wyman, of the firm of Charles H. Wyman & Co., at the time objected to making the entry and declaration in this form, on the ground that the value stated in the entry, $205, was the appraiser's valuation and not the importer's, and that the statements in the entry as to invoices and bills of lading having been submitted were untrue in fact. The collector, however, insisted that the entry and declaration would have to be made in that form to secure the delivery of the goods. He also demanded a bond to produce the consular invoices within a specified time. Within the time prescribed in the bond, Mr. Sommers furnished the collector with consular invoices which showed that Mrs. Drey had paid $749.10 for the pictures.

On April 20, 1908, and soon after the consular invoice was received, the collector requested a reappraisement of the goods, and they were reappraised by General Appraiser Howell at the sum of 3,150 marks, or $750, which he found to be the market value or the wholesale price at the period of exportation to the United States. The reappraisement was then stamped upon the original entry, the goods seized, and a suit was begun to forfeit the goods on the ground that they had been entered by the importer at an undervaluation. This suit resulted in a judgment in favor of the importer, the court holding that there had been no undervaluation by the importer, and directing that the paintings be surrendered into the possession of the claimant upon payment of the actual duty due, "but without the additional duty of 50 per cent." After the decision in the forfeiture case, but before the entry of the judgment, the collector, on the 29th of June, 1906, reliquidated the entry, assessing duty on the value of the goods as shown by the reappraisement, and adding 50 per cent. additional duty. Whereupon, within the time provided by law, the importer filed his protest against this reliquidation, which protest was overruled by the Board of United States General Appraisers. Within 30 days thereafter, the importer filed his petition for review of the board's decision, and upon a hearing the Circuit Court entered the decree here complained of.

The sole question presented for decision by this record is whether the collector of customs at the port of St. Louis had the right, under the facts disclosed by the record, to assess the additional duty of 50 per cent. provided for by section 7 of the act of June 10, 1890, as amended July 24, 1897. I think it is entirely clear that the entry in this case was not made, and could not have been made, under sections 4 and 5 of the act of June 10, 1890. Section 4 of that act prohibits an entry to be made in the absence of a certified invoice upon an affidavit, unless the affidavit is accompanied by a statement in the form of an invoice, or otherwise, showing the actual cost of the merchandise imported, if purchased, or, if obtained otherwise than by

purchase, the actual market value or wholesale price thereof, at the time of exportation to the United States, in the principal markets of the country from which the same has been imported. The statement required by this section could not be made by the importer or his agent in this instance, because he had no information whatever upon the subject, and so stated to the collector at the time the entry was made. Neither could the declaration required by section 5 be made, because no invoice had been received. Sections 2788 and 2926 of the Revised Statutes (U. S. Comp. St. 1901, pp. 1869, 1929) provide, I think, for an entry such as we have here, and are not in conflict with the provisions of the act of June 30, 1890, because they provide for a case not therein provided for, viz., where it is impossible for the importer to make either the affidavit or statement required by sections 4 and 5 of that act. Section 2788 (U. S. Comp. St. 1901, p. 1869), provides that:

"Where the particulars of any merchandise are unknown in lieu of the entry prescribed by section 2785, an entry thereof shall be made and received according to the circumstances of the case; the party making the same declaring upon oath all that he knows or believes concerning the quality and particulars of the merchandise; and that he has no other knowledge or information concerning the same."

Section 2926 (U. S. Comp. St. 1901, p. 1929), provides:

"That all merchandise of which incomplete entry has been made, or an entry without the specifications of particulars, either for want of invoice, or any other cause," shall be placed in some warehouse to be designated by the collector at the expense and risk of the owner, "until the particulars, cost or value, as the case may require, shall have been ascertained either by the exhibition of the original invoices thereof, or by appraisement, at the option of the owner, importer or consignee; and until the duties thereon shall have been paid, or secured to be paid, and a permit granted by the collector for the delivery thereof."

Liquidation means the ascertainment of the duties due the United States, taxed at the rate prescribed by law upon the particular class of merchandise imported. In this case it was 15 per cent. upon the value either of the purchase price, where purchased by the importer, as shown by the invoice, if the invoice price is equal to or greater than the market or wholesale price; or if the invoice price is lower than the market value, then with such added sum as will raise the total up to the market value; or the market or wholesale value where he procures them otherwise than by purchase. At the time the goods in this case were delivered, neither the importer, his agent, nor the customs officers knew their value, and could not then ascertain what it was; hence, I think, the permit or first liquidation was merely tentative, and was so understood both by the importer and customs officers. This is entirely clear when we examine the entry, because it is there stated that the duty of $30.75 is "estimated duty," and security was taken to furnish the consular invoice in order that the true value might be ascertained and a final liquidation made. It is immaterial whether the security was taken under section 2926 of the Revised Statutes, or under section 4 of the administrative act, for in both instances the condition of the bond is that the importer will pay the additional duty. In this case the bond was in form under

section 4, and provided for the production of the invoice within a specified time and the payment of the additional duty, if any. I do not deem it necessary to decide in this case whether the collector had the right to call for a reappraisement, for a reappraisement was had by the general appraiser, and, as already suggested, his report shows that the consular invoice represented the actual value or wholesale price of the goods at the time of exportation, upon which value the duty must be assessed and the importer must pay. But in this case there was no undervaluation by the importer which would authorize the taxation of the additional penalty, under section 7 of the customs administrative act, for he gave no statement of value, but, on the contrary, stated that he did not know the value. He had to accept the appraisement made by the local appraiser, and the mere fact that he made his entry in the form he did, upon the demand of the collector, in order to secure the goods, does not, in my opinion, affect his right to insist that he is liable only for the duty upon the valuation shown by the consular invoice. Robertson v. Bradbury, 132 U. S. 491, 10 Sup. Ct. 158, 33 L. Ed. 405. The case just cited arose under section 2926 of the Revised Statutes. There the importer sought to correct an entry made upon a certified invoice upon which certain nondutiable charges were included in the particulars of the merchandise instead of being stated separately. The customs officer, however, refused to permit him to make the entry upon the invoice with a supplemental invoice in which the nondutiable charges were separately stated, but insisted that the entry must be made on the value shown by the certified invoice, to which demand the importer yielded. In disposing of the case, the court, in the course of its opinion, said:

"As to the course which the plaintiff did pursue, we see no error in the position taken by the court, that although the statute prescribed a particular method to be followed under section 2926 of the Revised Statutes, in case of an incomplete entry of goods, or an entry without the specification of particulars, yet if, when the importer or consignee pointed out the imperfection, and desired to correct it, or have it corrected, he was met by a declaration of the officers that he must enter the goods at the value expressed in the invoice, and in no other way, and was given to understand that that was the only thing he could do, and he was compelled to do that in order to proceed at all, then he was not bound to ask for an appraisement under the statute. The case was prejudged against him."

The imposition of additional penalties under section 7 of the customs administrative act applies, I think, and were only intended to apply, to cases where a value is stated by the importer as of his own knowledge, or where he professes to have knowledge and information, and cannot be held to apply to a case where the importer states, under oath in an affidavit, as in this case, that he has no invoice and does not know the value, and where he is obligated to adopt the appraiser's value in order to get possession of the goods. Under this statute, these penalties accrue for an understatement of value by the importer, whether made innocently or fraudulently, because in such case an understatement of value may mislead the customs officers and thus deprive the government of the duties justly due; but that is not this case. Here the customs officers were advised of the fact

that the importer did not know the value, and that he simply adopted the value returned by the local appraiser, because he was compelled to do so in order to get possession of the goods; hence no one could be misled by his act. To give the statute any other construction would inflict the additional penalties upon an importer, acting in perfect good faith, simply because he lacked the information and knowledge requisite to enable him to correct the mistakes of the appraising officer.

The conclusion reached is that the importer in this case is liable for the duty upon the value shown by the consular invoice, but not for the additional duties sought to be imposed by the collector, and the judgment of the Circuit Court should be affirmed.